140 So.2d 729 (1962)
G. A. FLOURNOY, Plaintiff-Appellee,
v.
Richard E. BROWN, Jr., Administrator, Division of Employment Security, State of Louisiana, Defendant-Appellant.
No. 548.
Court of Appeal of Louisiana, Third Circuit.
May 7, 1962.
Marion Weimer, Baton Rouge, for defedant-appellant.
C. Kenneth Deshotel, Opelousas, for plaintiff-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
The Administrator for the Division of Employment Security for the State of Louisiana, has appealed to this Court from a judgment of the district court reversing a ruling of the Louisiana Board of Review, which Board had denied the claim of plaintiff for unemployment compensation benefits.
Plaintiff was a machinist who had been employed by Hunt Tool Company for some twenty-three (23) years prior to October 22, 1960. Plaintiff alleges in his petition that around February, 1960, the employer became arbitrary with respect to his employment, forcing the plaintiff to remain on "stand-by" 24 hours a day, 7 days a week, 52 weeks a year although the employer *730 knew whether or not the plaintiff would have work available in advance.
Plaintiff alleges further that the employer would sometime hold work over the weekend, thereby making the plaintiff work on Saturday and Sunday when the work could have been done during the week; that the employer showed plaintiff no consideration because of his seniority and long years of employment; and, that the acts of the employer gave him "good cause" connected with his employment for leaving same. He also alleged that he was entitled to unemployment compensation benefits.
Defendant denied the allegations of plaintiff's petition, taking the position that plaintiff was not entitled to benefits for the reason that he left his employment without "good cause".
The record reveals that Hunt Tool Company is generally engaged in oil field repair work and up until recent times, has had sufficient work to provide a 40 hour work week for its employees. With a slack in business facing it, the company found it necessary to reduce the work week from 40 to 35 hours, and adopted the policy of rotating the available work among 3 machinists, one of whom was the plaintiff. The company's policy was to the effect that, if the first man to be offered work did not accept same, or was absent, then this work would be offered to the next man on the list. This applied to all employees in the organization. After the reduction in the work week, the employees were paid overtime for any work over 40 hours. The employer would notify the employees every morning whether or not they were to work that particular day. The evidence reflects they were subject to call any and every day of the week.
Plaintiff testified that he had no objection to the 35 hour week, but that he did not feel he should have to sit around the telephone in the morning to determine whether or not he would have work for that day. He felt that the employer could so arrange its schedule so that he should be allowed to work beginning Monday and every day thereafter until he had worked a sufficient time for that particular week. The evidence reflects further that there were other employees who had worked in the same capacity as the plaintiff for a number of years, and they followed the same work schedule.
LSA-R.S. 23:1601, as amended, provides in part as follows:
"An individual shall be disqualified for benefits:
"(1) If the administrator finds that he has left his employment without good cause connected with his employment. * * *"
Since it has been determined that the plaintiff left for cause connected with his employment, the question to be determined in the instant case is whether or not he left for a "good cause". If he did, under the provisions of the above statute, he may collect unemployment compensation benefits. If he did not, he cannot recover same.
In 81 C.J.S. Social Security and Public Welfare § 167, at page 253 under the heading, "Good Cause", the following language is used:
"It has been said to be impossible to give a general definition of good cause. In general `good cause,' as used in an unemployment compensation statute, means such a cause as justifies an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed; the quitting must be for such a cause as would reasonably motivate in a similar situation the average able-bodied and qualified worker to give up his or her employment with its certain wage rewards in order to enter the ranks of the compensated unemployed. The terms `good cause' and `personal reasons' connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce *731 correlative results; adequate excuses that will bear the test of reason; just grounds for action. In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive; and one who leaves because of the distasteful character and habits of his fellow employees, or because the work offends his religious or moral principles, or because his family objects to the type of work, does not leave for good cause within the meaning of the unemployment compensation statutes."
In 81 C.J.S. Social Security and Public Welfare § 171 dealing with "Working Conditions", at page 258, the following statement is found:
"An employee may sometimes be justified in voluntarily terminating his employment, without losing his right to unemployment compensation, where he is called on to work under less favorable conditions, or where he is transferred from available work to work of a substantially different nature; but a change in the work ordinarily does not justify the employee in terminating his employment where the employer no longer has occasion to use the employee in the work he had formerly performed, either permanently or temporarily, but can continue the employment in some related capacity. Working conditions which are dangerous or detrimental to health constitute good cause for leaving one's employment. On the other hand, customary working conditions not involving deceit or other wrongful conduct on the part of the employer are not a sufficient reason for an employee voluntarily to leave his most recent work."
The most recent case on the subject is that of Friloux v. Administrator, Div. of Emp. Sec. of D. of L., (La.App., 4 Cir., 1962), 136 So.2d 99. In this case, Friloux had been employed as a well logger and made application to the Division of Employment Security for unemployment benefits. His claim was rejected for the reason that the Department concluded that he had left his employment without good cause connected with the employment. The evidence in that case showed that plaintiff had worked approximately 7 weeks for his employer and became dissatisfied because during that time he had worked for 4 separate crews in 6 different locations. Plaintiff filed suit in the district court and the lower court reversed the ruling of the Board and instructed the Administrator that the plaintiff was eligible for unemployment benefits. The Court of Appeal reversed the decision of the district court and held that to constitute "good cause" for leaving his employment within the meaning of the statute, the circumstances attending the final termination of his employment must be compelling and necessitous and not merely because plaintiff was dissatisfied with conditions which he knew existed at the time he accepted the employment.
In the case of Abrams v. Sharp, (La.App., Orl., 1959), 115 So.2d 880, plaintiff had worked for several months for an employer at a specified weekly salary. He became dissatisfied with the amount of his wages and asked his employer for an increase in salary which was denied. Additionally, the employer scolded plaintiff for not doing his job properly. The employee later left his job. He made a demand for unemployment compensation benefits which was denied by the Board of Review and the district court. He then appealed to the Court of Appeal. The Court of Appeal affirmed the district court and the finding of the Board of Review, and held that a refusal by an employer to grant a wage increase was not "good *732 cause" connected with his employment so that he could recover unemployment compensation benefits.
In Jenkins v. Heard, (La.App., 2 Cir., 1957), 92 So.2d 287, plaintiff was employed as a fireman, and his employment was voluntarily terminated by him, and thereafter, he filed a claim for unemployment compensation benefits stating that he was doing the same work as other firemen and received less pay. He asked for a raise which was refused, and he left his employment. The Board of Review of State Division of Employment Security denied plaintiff's claim. Upon a hearing by the district judge, the finding of the Board of Review was sustained. Plaintiff appealed to the Court of Appeal. The Court of Appeal held that plaintiff left a suitable job without good cause connected with his employment and affirmed the judgment of the district court.
There are also cases from other states dealing with the same subject matter as is involved in the instant case. Many of the reported decisions are from the State of Pennsylvania.
In the case of Fenstersheib v. Unemployment Comp. Bd. of Rev., (1956), 181 Pa. Super. 289, 124 A.2d 375, the Superior Court of Pennsylvania held that a claimant's dissatisfaction with the working conditions was not "good cause" for terminating his employment and did not entitle him to unemployment compensation.
In the case of Smith v. Unemployment Comp. Bd. of Rev., (1956), 181 Pa.Super. 185, 124 A.2d 707, the court held that a claimant who quit work because he was dissatisfied with conditions of his employment and because of a temperamental clash with his superintendent, did not terminate his employment for "good cause" and was not entitled to unemployment compensation benefits. The Pennsylvania statute in the above cases is similar to LSA-R.S. 23:1601.
In the instant case, the employer reduced the work week of plaintiff and other employees because of economic conditions. There was no showing that plaintiff was discriminated against. All employees were treated equally, and the working conditions were the same for all of them. Because of the type of business involved, namely, the oil field repair business, the employer did not know at what time it would be called upon to perform the services required of it so that the method they used in notifying the employees each morning of the work that they would require of the employees for that particular day was reasonable.
Considering all of the circumstances in the instant case, it is the opinion of this Court that the plaintiff did not leave his employment for "good cause", and accordingly, he is not entitled to unemployment compensation benefits.
For the reasons assigned, the judgment of the district court is reversed, set aside and annulled, and the decision of the Board of Review is reinstated and affirmed.
Reversed and rendered.