292 So.2d 228 (1974)
Rosie Adams BATEMAN
v.
HOWARD JOHNSON COMPANY and F. C. Doyal, Administrator, Louisiana Department of Employment Security.
No. 53651.
Supreme Court of Louisiana.
March 25, 1974.
*229 Jerry H. Smith, Staff Atty., Legal Aid Society of Baton Rouge, Baton Rouge, for plaintiff-applicant.
Marion Weimer, Baton Rouge, for Dept. of Employment Security.
BARHAM, Justice.
Rosie Adams Bateman applied for unemployment benefits based on her employment by Howard Johnson Company as a short order cook. The Louisiana Department of Employment Security disqualified plaintiff from receiving benefits, a decision that was appealed and affirmed by the Appeals Referee. The Louisiana Board of Review rejected the appeal and affirmed the Appeals Referee. Plaintiff then resorted to the courts where the Administrator of the Department of Employment Security alleged that the court's jurisdiction was limited to questions of law only by R.S. 23:1634. He then presented two questions of law for decision: (1) are the findings of fact supported by sufficient, legal, competent evidence as a matter of law; and (2) based on said findings, are the Board's legal conclusions correct as a matter of law? The administrative decision was upheld by the Nineteenth Judicial District Court and by the First Circuit Court of Appeal. La.App., 277 So.2d 764 (1973). We granted plaintiff's writ application. 279 So.2d 692 (La.1973). The Department chose not to argue or brief the case and submitted it on the record.
The Appeals Referee made the following finding of facts:
"The claimant worked for the above employer for seven days as a short-order cook for a rate of pay of $1.93 per hour. She was working from 6:00 p.m. until 11:00 p.m. each day. Her last night of employment with the company was the night of the curfew in Baton Rouge that began at approximately 9:00 p.m. The claimant was unable to obtain transportation home from her job and did not return after being employed for only a couple of days. The claimant was aware that there was no public transportation available after approximately 7:00 p.m. each evening. The claimant on many occasions had to pay a taxi to go home each night. The company does not provide transportation to and from work for its employees."
There is no evidence to support the finding that the plaintiff knew there was no public transportation available after 7:00 p.m. In fact, at the hearing, claimant testified, "* * * and I didn't know that the bus stopped running after 6 o'clock * * *." The record clearly establishes that public transportation was unavailable at the time plaintiff's work shift ended and that she was forced to take a taxi home each evening at a cost of $3.80. Her last day of employment the city of Baton Rouge was under a curfew following a racial disturbance and no transportation was available. Additionally, claimant attempted to secure transportation from family, friends, and *230 co-workers the days she worked at Howard Johnson's.
The reason plaintiff gave for quitting her job was the lack of transportation. R.S. 23:1601(1) provides in pertinent part:
"An individual shall be disqualified for benefits:
(1) If the administrator finds that he has left his employment without good cause connected with his employment."
Where an employee terminates his employment for purely personal reasons, he is not entitled to receive benefits under this act. Hargrove v. Brown, 247 La. 689, 174 So.2d 120 (1965). To determine what is "good cause connected with the employment" it is necessary to examine another section of the act. R.S. 23:1601 (3)(a) provides:
"In determining whether or not any work is suitable for an individual, the administrator shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence."
The availability and cost of transportation to and from a job is a factor in determining the suitability of employment. Where transportation is unavailable or available only at prohibitive cost it may render the employment unsuitable. See Immel v. Brown, 143 So.2d 156 (La.App. 3rd Cir. 1962); Johnson v. Administrator, Division of Employment Security, 166 So. 2d 366 (La.App. 3rd Cir. 1964). Workers who quit their jobs because their transporation ceased have been held entitled to benefits since their reason for leaving were employment connected. See Haskett v. Brown, 165 So.2d 25 (La.App. 2d Cir. 1964); Brown v. Brown, 153 So.2d 190 (La.App. 2d Cir. 1963). This employee had to pay forty per cent of her wages for transportation ($4.10 out of a gross pay of $9.65). Termination of her employment was for good cause connected with her employment.
The judgments of the lower courts are reversed. The Louisiana Department of Employment Security is ordered to pay unemployment compensation to Rosie Adams Bateman.
SUMMERS, J., dissents and assigns reasons.
SUMMERS, Justice (dissenting).
Rosie Adams Bateman filed a claim for unemployment insurance benefits effective December 26, 1971, based on her employment by Howard Johnson Company. La. R.S. 23:1471-23:1713. The Louisiana Department of Employment Security disqualified plaintiff from receiving benefits. The decision was appealed, and the Appeals Referee affirmed. From this determination, claimant appealed to the Louisiana Board of Review, which rejected the appeal and affirmed the Appeals Referee.
After exhausting these administrative remedies, claimant sought judicial review in the Nineteenth Judicial District Court, Parish of East Baton Rouge. Claimant's petition was answered by the Administrator of the Department of Employment Security, alleging that the court's jurisdiction was limited to questions of law only by Section 1634 and that two questions of law were presented for decision:
(1) Are the findings of fact supported by sufficient, legal, competent evidence as a matter of law; and (2) based on said findings, are the Board's legal conclusions correct as a matter of law? After due proceedings, judgment was rendered upholding the Board of Review. On appeal to the First Circuit, the judgment was again affirmed. La.App., 277 So.2d 764. Certiorari was granted on claimant's application. La., 279 So.2d 692. Only claimant *231 has appeared and briefed the case in this Court.
The facts as found by the Appeals Referee are stated to be:
The claimant worked for the above employer for seven days as a short order cook for a rate of pay of $1.93 per hour. She was working from 6:00 p.m. until 11:00 p.m. each day. Her last night of employment with the company was the night of the curfew in Baton Rouge that began at approximately 9:00 p.m. The claimant was unable to obtain transportation home from her job and did not return after being employed for only a couple of days. The claimant was aware that there was no public transportation available after approximately 7:00 p.m. each evening. The claimant on many occasions had to pay a taxi to go home each night. The company does not provide transportation to and from work for its employees.
All tribunals have rejected the claim on the determination that claimant left her job for a personal reason without good cause connected with her employment.
The provisions of the Louisiana Employment Security Law urged for our consideration are contained in Section 1601, subparagraphs (1) and (3)(a) of Title 23 of the Revised Statutes. In pertinent part, they read:
An individual shall be disqualified for benefits:
(1) If the administrator finds that he has left his employment without good cause connected with his employment. . .
. . . . . .
(3) If the administrator finds that he has failed, without good reason, either to apply for available, suitable work when so directed by the administrator or to accept suitable work when offered him. . .
(a) In determining whether or not any work is suitable for an individual, the administrator shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, the length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.
In his findings of fact the Appeals Referee set forth that "The claimant was aware that there was no public transportation available after approximately 7:00 o'clock p. m. each evening." It is asserted that this finding, although approved at all stages of these proceedings, is not supported by the record, for there is no evidence that claimant knew that public transportation was not available to her to return home in the evenings. Claimant's statement that she "didn't know that the bus stopped running at 6:00 o'clock" is cited to support the contention.
There are written statements in the record by claimant entered in support of her claim. One sets forth that she had previously worked for Howard Johnson for about three days and that she "had no transportation so I had to quit." Though this Howard Johnson establishment is not the one involved in the instant case, the statement undoubtedly led to the inference that claimant knew the bus schedules generally and was aware of the fact that no transportation would be available after certain hours from the Howard Johnson involved in the instant case. Her testimony also makes clear that the employer did not agree to furnish transportation in connection with her employment in the instant case. A reasonable inference may be drawn from this testimony that the transportation problem was discussed at the time of employment. According to Howard Johnson's manager, claimant's first night of work was New Year's Eve. She didn't show up for work the next day, he said, so he fired her. She called back, *232 however, asking for her job. Under the condition that she would report regularly to work, she was rehired. She returned to work for several days and again did not show up. After an absence of two days she came for her check and did not thereafter return to work.
Admittedly, the record may be sketchy on this controverted question of fact. However, generally, it is not expected that these administrative proceedings will exhaust a factual issue as thoroughly as may be expected in a trial of a more weighty matter. We should proceed upon the basic assumption that the Appeals Referee is knowledgeable in this field and possessed of some expertise which enables him to make a fair determination on the limited presentation the circumstances surrounding these cases require. Further, the Legislature mandates that "the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law." La.R.S. 23:1634. This is the strongest type of limitation on judicial review. Under these circumstances we are not called upon to re-evaluate the weight to be given to the evidence, and we should accept the findings of fact which we find supported by evidence reasonably tending to support them. Hargrove v. Brown, 247 La. 689, 174 So.2d 120 (1965); Kemper v. Doyal, 212 So.2d 166 (La.App.1968). Our jurisdiction in these cases is limited as noted in Hargrove v. Brown, and we cannot properly consider factual issues where the record supports the finding of fact.
Based upon the finding of fact it was determined at all levels of these proceedings that transportation of the employee was not part of the employment agreement. The inadequacy of transportation, therefore, as a cause for leaving this employment was not the "good cause connected with . . . (the) employment" which the law contemplates. La.R.S. 23:1601(1). Conceding arguendo that claimant had good cause in the general sense to quit her employment, Louisiana law does not approve the payment of compensation to claimants who voluntarily quit employment, unless the good cause is connected with the employment.
Prior to Act 401 of 1952, Section 1601(1) did not require that the "good cause" be "connected with the employment". The addition of this phrase is a significant change. It adds to the previous requirement of good cause the condition that the cause must be connected with the employment. Thus, the Section as it now stands cannot be satisfied simply by showing good cause. That cause must also be connected with the employment. The rule is more strict than formerly; its scope is narrowed.
Although no hard and fast rule can be formulated to determine whether the good cause is connected, some obvious inquiries are suggested: Did the good cause arise during the hours of employment, on the employer's premises; while engaged in the work of the employer; is it due to conditions of employment; or did the cause arise out of the employer's failure to abide by a condition of the contract of employment? Some of these inquiries would seem to be pertinent to a finding of connection. None, however, are satisfied by the facts of this case.
Claimant asserts that since the bus did not run after 6 o'clock in the evening, and because she worked until 11 p. m. and could not get a ride home, she was compelled to hire a taxi. The cost of the taxi was $3.80, an expense she could not bear on a wage of $1.93 per hour.
Notwithstanding the contention that this was "good cause" to quit her employment, it had been uniformly determined throughout these proceedings that the cause was personal to claimant and not connected with the employment.
The law does not approve the payment of benefits to a claimant who is voluntarily *233 unemployed except when the unemployment occurs under prescribed circumstances which do not disqualify claimant from the benefits of the Act. In this case though it may be said that the cause for leaving may have been a good personal cause, it cannot be considered as connected with the employment. Putnam v. Department of Employment Security, 103 N.H. 495, 175 A.2d 519 (1961); Kontner v. Unemployment Comp. Bd. of Review, 148 Ohio St. 614, 76 N.E.2d 611 (1947); Teple, Disqualification: Discharge for Misconduct and Voluntary Quit, 10 Ohio St.L.J. 191, 204 (1949). Many more "good causes" may be found warranting leaving one's employment, but the plain fact is that they do not furnish grounds for unemployment benefits unless they are connected with the employment.
The employer did not agree to furnish transportation, and adequate transportation was not a condition of the employment.
In the absence of contract, custom or a collective bargaining agreement imposing an obligation of transportation on the employer, transportation is usually considered a problem of the employee. It is his responsibility in order to make himself attached to the labor market. Copeland v. Oklahoma Employment Sec. Commission, 197 Okl. 429, 172 P.2d 420; Zupancic Unemployment Compensation Case, 186 Pa.Super. 252, 142 A.2d 395 (Putnam v. Department of Employment Security, 103 N.H. 495, 175 A.2d 519 (1961))
In considering the case of a claimant, a widow fifty-six years old, who left her employment because she did not have transportation, the Superior Court of Connecticut decided:
. . . the only reason for the plaintiff's unemployment is her lack of transportation to and from work. She had a job available to her. The lack of transportation to enable her to report to her available job was due to her own personal circumstances. It was her own personal problem and responsibility to make herself available to the labor market. Her lack of transportation may be a good personal cause for her leaving her job, but it was not due to any "cause connected with . . . (her) employment" and was not attributable to the employer under the statute. Malleable Iron Fittings Co. v. Hall, 15 Conn.Sup. 445; Matter of Leon (Porta Aluminum Inc.), 25 A.D.2d 925, 270 N.Y.S.2d 233 (Tackett v. Administrator, 29 Conn.Sup. 251, 282 A.2d 582 (1971)).
A further argument is made based upon the factual premise that claimant was unaware of the lack of public transportation when she was initially offered the employment opportunity by Howard Johnson Company. It is contended that had she known that a substantial portion of her earnings would have gone to transportation, the employment would have been rendered unsuitable. Under these circumstances, it is argued, she would have been entitled to refuse the employment as unsuitable because of "the distance of the available work from . . . (her) residence" as Section 1601(3)(a) provides and she would not have been disqualified from benefits. The fact that she accepted the employment and later discovered the unsuitability should not deny her benefits.
The fallacy of this latter contention is the premise upon which it is founded. Reference to the earlier conclusion reached in this dissent and by the other tribunals makes clear that claimant knew of the transportation problem at the time she accepted the employment. The record supports rejecting her contention to the contrary. Moreover, Section 1601(3)(a) is inapplicable to the facts of this case, dealing as it does with disqualification for benefits for failing to apply for available suitable work or to accept suitable work when offered. The case at bar concerns an altogether different factual problem involving leaving employment once entered intoa situation governed by Section 1601(1). It would offend reason and logic and frustrate *234 the legislative intent to apply the "suitability" test of Section 1601(3)(a) to a factual situation it was not designed to cover, and, in so doing, rewrite Section 1601(1) by eliminating the "good cause connected with employment" requirement. In so doing we would also be denying the application of Section 1601(1) to the facts before us as the legislature intended.
I find, therefore, that claimant is disqualified under the Act. My opinion is in accord with the substantial cited authority of other jurisdictions; it also carries out the legislative intent which the majority opinion denies.