374 So.2d 1182 (1979)
Paul J. BOUDREAUX, Plaintiff-Appellant-Relator,
v.
LOUISIANA BOARD OF REVIEW, DEPARTMENT OF EMPLOYMENT SECURITY, State of Louisiana, Administrator of the Department of Employment Security, State of Louisiana and Vinson Guard Service, Defendants-Appellees-Respondents.
No. 63632.
Supreme Court of Louisiana.
September 4, 1979.
Robert H. Fray, White, Fray & White, Gretna, for plaintiff-appellant-relator.
James McGraw, Marion Weimer and James A. Piper, Baton Rouge, for defendants-appellees-respondents.
TATE, Justice.
The administrative board held that the plaintiff employee was disqualified from receiving benefits because he "left his employment without good cause connected with his employment." La.R.S. 23:1601(1). The court of appeal affirmed the district court's rejection of his application for judicial review of this determination, one judge dissenting. 363 So.2d 1258 (La.1978).
*1183 On the plaintiff's application, we granted certiorari, 366 So.2d 560 (La.1979), because we entertained doubt that, as a matter of law, the board of review of the agency was correct in finding that the employee's reason for leaving his employment was not "good cause connected with his employment."[1]
Facts
The agency record and the evidence taken at the agency hearing show:
The plaintiff had initially become unemployed through no fault of his own. On March 4, 1976, he accepted employment at $2.36 per hour with the Vinson Guard Service. Until March 28, he was employed at Avondale, near his home. On that date, he was transferred to serve as guard at Good Hope, which required a round trip of 48 miles daily to commute from his home. His automobile was "in bad shape", and this daily round trip proved to be too expensive in relation to the pay earned.
After nearly two months, on May 20 he asked his supervisor for a transfer to a work area he could reach without this unduly great expense. His supervisor told him to keep working until the supervisor could find him a new position. The employee did so until June 9, when he ceased his employment because no nearer position had been found and because he could not afford to continue commuting to the Good Hope work area.
The plaintiff's application for unemployment compensation was denied. The appeals referee found the above facts and the further fact: "The employer did not promise to furnish transportation." The referee concluded: "The claimant left the employment as his car was not operating properly and he felt it was too far to the job site. This was a personal reason, as the employer did not violate the hiring agreement. It is concluded that the claimant left the employment without good cause connected with the employment."[2]
Legal Principles Applicable
In Bateman v. Howard Johnson Co., 292 So.2d 228 (La.1974), a short-order cook had been administratively disqualified from receiving unemployment compensation because she quit work due to lack of available economical transportationemployed for five hours daily at $1.93 per hour, she was forced to take a taxi home nightly at a cost of $3.80, about 40% of her wages. Rejecting contentions similar to the present, this court held that this reason for quitting employment was "good cause connected with" employment, so as to justify the payment of unemployment compensation to an employee who terminated his job for such reason.
We held that, under the circumstances there reflected, the reason for quitting work was not merely a personal (and thus disqualifying) one.
In reaching this conclusion, we relied upon a provision in the same unemployment compensation statute which provides that an employee should not be disqualified for refusing to accept employment offered which is not "suitable" because of "the distance of the available work from his residence." La.R.S. 23:1601(3)(a). In substance, we held that it is good cause connected with employment for an employee to quit his job when the work becomes un suitable within the meaning of the statute due to unanticipated working conditions. See also, to same effect, Haskett v. Brown, 165 So.2d 25 (La.App. 2d Cir. 1964), when *1184 the change in transportation availability after initial hiring made the employment unsuitable and, therefore, a good cause connected with the employment for resigning from the work.
Where transportation is unavailable or available only at prohibitive cost, it may render the employment unsuitable. Johnson v. Administrator, Division of Employment of Security, 166 So.2d 366 (La.App. 3d Cir. 1964); Immel v. Brown, 143 So.2d 156 (La.App. 3d Cir. 1962).
Conclusion
In the absence of a finding that the initial employment agreement specifically contemplated that the employee provide transportation for himself to a work-site 48-miles round-trip from his home, we find that, under the circumstance, the plaintiff-employee left his job for good cause connected with his employment. The circumstances we rely upon are: the plaintiff's employment at $2.36 per hour; his transfer to a post 48-miles round-trip from his home after his initial employment; and the unavailability at reasonable cost of adequate available transportation to his changed and far more distant work-site. As stated by the dissenting judge in the court of appeal, "under these circumstances, ... [the] plaintiff's employment was unsuitable, and... he had left his employment for good cause." 363 So.2d 1261.
The plaintiff is thus entitled to unemployment compensation benefits.

Decree
For the reasons assigned, the judgments of the district and intermediate courts dismissing the plaintiff's suit are reversed, and the case is remanded to the defendant board of review for it to enter an order in accordance with the ruling of this court. La.R.S. 23:1634.
REVERSED AND REMANDED.
SUMMERS, C. J., dissents for the reasons assigned.
SUMMERS, Chief Justice (dissenting).
Paul J. Boudreaux was employed as a security guard (watchman) by Vinson Guard Service on March 4, 1976. He was first assigned to a post in Avondale which was in close proximity to his residence. On March 28, 1976 he was transferred to an assignment in Good Hope which was twenty-four miles from his residence. He did not refuse this assignment, but after two and a half months he notified his employer that it was no longer practicable for him to travel from his residence to Good Hope because his car was in poor condition and the additional expense was not justified by the salary he was receiving from Vinson. He requested a transfer to a position closer to his residence, but the company had no such position available at that time. Boudreaux therefore resigned from his job on June 9, 1976. Because he was unable to secure other employment, he applied for unemployment compensation.
After an administrative hearing on his request, Boudreaux was denied compensation on the ground that he left his job because of personal reasons which did not constitute "good cause connected with his employment" as required by Section 1601(1) of Title 23 of the Revised Statutes, the Louisiana Unemployment Security Law. In pertinent part Section 1601(1) provides: "An individual shall be disqualified for benefits: (1) If the administrator finds that he has left his employment without good cause connected with his employment." Boudreaux thereafter filed a petition in the Twenty-fourth Judicial District Court for review of the administrator's decision to deny unemployment compensation pursuant to his request. The district court denied Boudreaux's claim.
On appeal to the Fourth Circuit the attorney for the Office of Employment Security submitted the matter on behalf of the Administrator on the record and brief filed by Boudreaux's attorney. Nevertheless the Court of Appeal affirmed the judgment of the trial court, because Boudreaux testified that he knew in advance he could be assigned to a post in Good Hope, the Court of *1185 Appeal concluded his reasons for leaving his employment were personal and not "connected with his employment," as required for eligibility for unemployment compensation under the terms of Section 1601(1) of the Louisiana Unemployment Security Law. 363 So.2d 258. Boudreaux's application for certiorari was granted by this Court. 366 So.2d 560.
On this review Boudreaux complains that it was error for the Court of Appeal to conclude that he terminated his employment for personal reasons not "connected with his employment." He contends also that the Court of Appeal erred in failing to consider the fact that the administrator specifically asked that the decision of the Board of Review should be reversed.
In deciding whether an employee "has left his employment without good cause connected with his employment" (La.Rev. Stat. 23:1601(1)) Boudreaux asserts that Section 1601(3)(a) should be read with Section 1601(1) in order to arrive at a correct application of "good cause" for leaving one's employment.
In pertinent part Section 1601(3)(a) provides:
"In determining whether or not any work is suitable for an individual, the administrator shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience, his length of unemployment, his prospects for securing local work in his customary occupation, and the distance of the available work from his residence, his highest level of educational attainment as evidenced by a formal degree. In addition, the administrator shall consider the individual's prior earnings unless employment is offered by a base period employer, in which case the rate of remuneration and the level of skill shall be equal to or greater than the highest amount paid the employee in his former employment with said base period employer ...." [emphasis added].
When these two sections are read together, according to Boudreaux, it becomes apparent that there was "good cause" for leaving his employment because Section 1601(3)(a) declares that "the distance of the available work from his residence" must be considered. When this is done, he argues, it is evident the work is not "suitable", distance being a factor of suitability under the guidelines of Section 1601(3)(a).
Boudreaux's reliance on Section 1601(3)(a) in aid of his version of Section 1601(1) is misplaced. Section 1601(3)(a) applies when an employee is out of work and he is applying for compensation. In this situation if he fails "without good cause, either to apply for available, suitable work when directed by the administrator or to accept suitable work when offered him, or to return to his customary self employment," he will not qualify for benefits. The definition of "suitable" work as there used has no relation to a determination of "good cause" for leaving employment already accepted as contemplated in Section 1601(1). This conclusion is particularly pertinent to the facts of this case where the employee was advised of the conditions and accepted the employment with full knowledge that he could be assigned to a post in Good Hope. Furthermore, nothing in the employment agreement indicated that transportation was or would be furnished by the employer; nor does anything in this record indicate that Boudreaux expected his employer to furnish transportation. To the contrary, his use of his own automobile from the very beginning makes it clear that he expected to furnish his own transportation as a condition of his employment. Changes in the place of work or adequacy of transportation were not therefore "good cause connected with his employment."
It is generally accepted that in the absence of a contract, custom or a collective bargaining agreement imposing an obligation of transportation on the employer, transportation is usually considered a problem of the employee. It is his responsibility in order to make himself attached to the labor market. Copeland v. Oklahoma Employment Sec. Comm., 197 Okl. 429, 172 P.2d 420 (1946); Zupancic Unemployment Compensation Case, 186 Pa.Super. 252, 142 *1186 A.2d 395 (1958); Putnam v. Department of Employment Security, 103 N.H. 495, 175 A.2d 519 (1961).
It is an equally well established principle in such cases and by statute that if an employee leaves his job for good cause, he is nevertheless disqualified to receive benefits if the cause is not work related. Hargrove v. Brown, 247 La. 689, 174 So.2d 120 (1965).
In summary of Boudreaux's contention that he had "good cause" to quit his employment, I find that his cause might have been good but it was a personal problem not connected with his employment. His employer did not agree to furnish transportation and the matter of transportation was therefore not a condition of or connected with his employment. The worn-out condition of Boudreaux's car and the expense of transportation to and from work were personal problems not work related within the contemplation of the statute.
In the other assignment of error the inconsistent position of the administrator in first opposing and then approving Boudreaux's claim when it reached the court of appeal is not determinative of the outcome in this case. While the administrator's finding is sometimes persuasive it is not binding on the courts. There is no dispute of fact here only questions of law which courts properly review. The employer's contribution to the administrator for the fund from which such a claim would be satisfied gives the employer an interest in the outcome of this litigation. Courts are therefore charged with a duty to consider the interest of the employer and the employee.
I respectfully dissent.
NOTES
[1] We note that the Administrator of the Division of Employment Security, charged with administering the provisions of the unemployment compensation act, answered the employee's petition for judicial review by joining in his demand that the board's determination be reversed as erroneous.
[2] We note that the referee did not rely on the employee's affirmative response ("Yes") to a general question which indicated that, at the time of his application for employment, he realized he could have been offered work at the Good Hope site. We thus do not reach the issue of whether it is nevertheless good cause connected with his employment for an employee to quit work from a $2.36 per hour job when transportation expenses become inordinate because of a transfer, even if the possibility of a transfer was realistically contemplated as an aspect of the employment at the time of the initial hiring.