JASPER E. JONES, Judge.
This is an appeal of a trial court judgment affirming a decision by the Board of Review disqualifying Murl Plunkett, the claimant-appellant, from receiving unemployment benefits. The defendants-appel-lees are the Administrator of the Louisiana Office of Employment Security and the appellant’s former employer, Independent Mud Logging.
FACTS
The appellant was hired by Independent Mud Logging to do oil field work as a mud logger but voluntarily quit less than one month later in order to accept other employment. He subsequently applied for unemployment benefits. The Office of Employment Security determined he did not leave his mud logging job for any good cause connected with such employment and disqualified him from receiving benefits. The appellant challenged this determination and the appeals referee and the Board of Review subsequently upheld the disqualification. The appellant applied for judicial review of the decision of the Board of Review and the trial court affirmed.
The appellant’s two assignments of error present the following issues for decision:
1. Can the appellant be deemed to have “left” his employment when he does so due to the nonavailability of work assignments?
2. Can the appellant be deemed to have left his employment without “good cause” considering his irregular work assignments, his problems with transportation to an out of state job assignment and his favorable prospects for acquiring employment in his customary occupation closer to home?
LAW ON THE DISQUALIFICATION FOR UNEMPLOYMENT BENEFITS RESULTING FROM THE VOLUNTARY RESIGNATION OF EMPLOYMENT
An individual shall be disqualified for benefits if the administrator finds he has left his employment from a base period or subsequent employer without good cause connected with his employment. LSA-R.S. 23:1601a).[1]
The word “left” in LSA-R.S. 23:1601(1) is intended to cover those situations where an employee quits, or voluntarily leaves or resigns his employment. Piggly Wiggly Of Springhill, Inc. v. Gerace, 370 So.2d 1327 (La.App. 2d Cir.1979). Where the claimant’s leaving his employment is not a factual issue, the issue of “leaving” and meaning of the term “left” become purely legal matters since they involve the interpretation of law. Shoennagel v. Louisiana Office of Employment, 413 So.2d 652 (La.App. 1st Cir.1982).
The term “good cause” has been defined as a cause connected with working conditions which affects the employee’s ability to continue work or the benefits the employee may receive from his employer either upon continuation of work or retirement. Mere dissatisfaction with working conditions does not constitute “good cause” unless the dissatisfaction is based upon a substantial change in wages or working conditions from those in force at the time the claimant’s position began. Nason v. Louisiana Dept. of Employment Sec., 475 So.2d 85 (La.App. 2d Cir.1985), writ den., 478 So.2d 149 (La.1985).
Judicial review of the decisions of the Board of Review is limited and the findings of the Board as to facts and credibility, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. LSA-R.S. *109 23:1634;[2] Carter v. Blache, 476 So.2d 873 (La.App. 2d Cir.1985).
Issue #1 — Did the appellant “leave” his employment?
Appellant argues that he cannot be deemed to have “left” his mud logging job as when he returned from Mississippi he was informed by his supervisor that there was no work assignment available and that “possibly” he could remain on the payroll. The appellant asserts this state of affairs, in effect, amounted to him being laid off and it was only then that he sought other employment.
The record shows that when the appellant appealed the initial determination of disqualification he gave the following reasons for his actions:
“On the job I was working I was already informed that I would be bumped off this job because of seniority of logger that was to replace me. His job was finished so he was to be sent to job I was on. I was then to be sent to Miss, to relieve logger there for two weeks. I requested to stay on job a few more days because I needed to make arrangements for transportation for my wife. I was layed [sic] off until arrangements were made. I was then told the man I was to replace in Miss, wanted to stay longer. I was off 1 week before I was supposed to go to Miss. While off I found work with ACE Electric & part-time with Suni-Lab Petro. Services, Quitman, LA.”
At the hearing on the appeal the appellant testified he quit his mud logging job voluntarily. When asked directly whether he had been laid off upon his return from Mississippi the appellant testified as follows:
REFEREE: When you come back from Mississippi, were you laid off?
CLAIMANT: Well, I say, he said he didn’t know where I was going to be.
He didn’t know if he had any work or not, because two jobs had just went down.
REFEREE: He had a job in Mississippi for you though?
CLAIMANT: For two weeks.
The appellant testified he quit his job when he found comparable work close to home:
REFEREE: I want to know what you told the fellow, when you told him, you were quitting, first, Mr. Plunkett?
CLAIMANT: Oh. Oh, I told him, I had decided to go ahead and quit, because I had found work on the weekend. That a forty hour a week job, during the week, and that I, after I, when I was getting off that job, he hadn’t promised me any work at all.
REFEREE: So you had found other, another job?
CLAIMANT: Yes, sir. I found work with a mud logging company here in Whitman (phon.) on the weekend, and then, I was working with an electrician, during the week.
REFEREE: Both jobs were there at home?
CLAIMANT: They were close. Yes, sir. Well, working in Ruston with the electrician, and in (inaudible) and around the Ruston area with mud logging.
REFEREE: And these other jobs, you made more money?
CLAIMANT: About the same.
REFEREE: You made about the same money working 7 days a week, with them that you were making with Mr. Hudson?
CLAIMANT: Yes, sir.
Ms. Wanda Hudson, Vice-President of Independent Mud Logging, testified that when the appellant quit he was still on the pay *110 roll and that the only job in progress was the one in Mississippi.
We conclude the appellant “left” his employment within the meaning of LSA-R.S. 23:1601(1). The appellant testified he voluntarily quit his mud logging job and, as such, the issue devolves to a legal interpretation of the term “left.” Shoennagel v. Louisiana Office Of Employment, supra. He offers no authority to support his “constructive lay off” argument and we perceive no valid reason to recognize a concept that would permit us to ignore the reality of his admitted voluntary resignation. The record conflicts with the appellant’s argument underlying his assignment of error. Contrary to the appellant’s version of events, he was assigned to another ongoing job upon his return from Mississippi. When this job terminated his supervisor informed him that the only job available was the one in Mississippi and it was uncertain when he would be assigned to return. At the time of his resignation, the appellant was still on the payroll and had been twice offered a work assignment at the Mississippi job site.
The appellant had not been laid off, constructively or otherwise, when he voluntarily quit his mud logging work and the trial court and the Board of Review were correct in concluding that he had “left” his employment within the meaning of LSA-R.S. 23:1601(1). We now turn to an analysis of whether he had “good cause” to leave his job.
Issue #2 — Did the appellant have “good cause” to quit?
The appellant asserts that he had “good cause” to quit his employment considering the irregular work assignments, his problem with transportation to the Mississippi work site and his favorable prospect for securing available work in his customary occupation closer to his home.
The record shows that at the appeals hearing the Vice-President of Independent Mud Logging testified the appellant was hired as a mud logger but quit in less than one month. The witness also related that the appellant was aware, at the time he was hired, of no guarantee of job assignments due to his low seniority status. She also related that the appellant was paid $30.00 per day expenses in addition to his regular wages when assigned an out of-state job in Texas, Arkansas or Mississippi.
The appellant testified he had been “bumped” off jobs three times since beginning his employment due to his lack of seniority and the “pretty bad oil field business” and the only reason he quit was to find more stable employment closer to his home town of Jonesboro, Louisiana. He related his transportation problems arose because he had only one vehicle and needed to arrange transportation for his wife. He found mud logging work in Quitman, Louisiana, on a part-time basis and also secured employment as an electrician in Ruston, Louisiana. Together these jobs provided approximately the same compensation as his mud logging work for Independent Mud Logging.
We determine the appellant did not have “good cause” to quit his employment. It is true that the factors listed by the appellant are part of the determination as to whether a particular job has become unsuitable. LSA-R.S. 23:1601(3)(a);[3] Boudreaux v. Louisiana Bd. Of Review, 374 So.2d 1182 (La.1979). However, this determination is predicated upon the work becoming unsuitable due to unanticipated working conditions. Nason v. Louisiana *111 Dept. Of Employment Sec., supra; Joshua v. State, Office of Employment Sec., 460 So.2d 714 (La.App. 3d Cir.1984). The record establishes the appellant was aware of the poor economic state surrounding the mud logging business, as this was his usual occupation, and he does not assert that he was unaware of the existing working conditions and job requirements at the time he was hired. An analysis of each of the listed factors reveals he quit for personal reasons not justifying his eligibility for benefits.

irregular working assignments

The record shows the appellant’s irregular working assignments were the result of the poor economy and his low seniority. The appellant does not assert that he was treated less favorably than employees of similar seniority or that working conditions were not the same for all. Under these facts, the appellant’s lack of regular work did not amount to “good cause” to quit his mud logging job. Flournoy v. Brown, 140 So.2d 729 (La.App. 3d Cir.1962). In addition, he was aware of these conditions at the time he was hired. Joshua v. State, Office Of Employment Sec., supra. See also, Perry v. Brown, 162 So.2d 444 (La.App. 3d Cir.1964), writ den., 246 La. 361, 164 So.2d 356 (1964). transportation problems
As the appellant does not assert a complete lack of transportation to the Mississippi job site, or that any prohibitive costs are involved, then the problem of allocating one vehicle between himself and his wife, a condition he was aware of when hired, does not amount to “good cause” to quit. Joshua v. State, Office Of Employment Sec., supra.

availability of suitable work in the local area

Appellant argues he had just cause to quit his job because he found local employment. Appellant’s argument has no merit because the totality of the record establishes appellant knew the working conditions at Independent Mud Logging at the time he took the job. These working conditions included the performance of work that was not in the Jackson Parish area. Applicant's finding a local job cannot be just cause for quitting a job he accepted knowing that it required nonlocal work.
CONCLUSION
For the reasons assigned, the judgment is AFFIRMED.

. § 1601. Disqualification for benefits
An individual shall be disqualified for benefits:
(1) If the administrator finds that he has left his employment from a base period or subsequent employer without good cause connected with his employment....

. § 1634. Judicial review; procedure
Within the time specified in R.S. 23:1630, the administrator, or any party to the proceedings before the board of review, may obtain judicial review thereof by filing in the district court of the domicile of the claimant a petition for review of the decision, and in such proceeding any other party to the proceeding before the board of review shall be made a party defendant. ... In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. [emphasis added]

. § 1601 Disqualification for benefits
An individual shall be disqualified for benefits:
(3) If the administrator finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the administrator or to accept suitable work when offered him, or to return to his customary self-employment, if any, when so directed by the administrator....
(a) In determining whether or not any work is suitable for an individual, the administrator shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience, his length of unemployment, his prospects for securing local work in his customary occupation, the distance of the available work from his residence, and his highest level of educational attainment as evidenced by a formal degree,... [emphasis added]