MARVIN, Judge.
From a judgment of the district court that reverses the State agency’s determination that the employee was disqualified for unemployment benefits under LRS 23:1601(1), the employer appeals.
The issue is whether an employee, who, after accepting employment in a retail store 45 miles away from his residence and leaves that employment three months later because his personal automobile failed, has “good cause connected with the employment” for having “left,” as those statutory terms are construed. § 1601(1).
The Referee and the Board of Review of the agency found that the claimant left his employment for personal reasons without good cause [connected with his employment].
The district court’s judgment reversing the Agency determination resulted from the Agency’s counsel agreeing with claimant that he had the statutory “good cause” to leave his employment. That judgment provoked this appeal by the employer who did not appear in the district court. CCP Arts. 2082, 2086.
We reverse and render judgment affirming the agency determination.
FACTS
The referee made the following findings of fact:
The claimant [who resided in Rayville and who was hired by a retail store 45 miles away in Lake Providence] worked for the named employer for about three months until September 28, 1986. He was a stocker at the rate of $4.00 per hour, and worked varied hours as needed. The claimant was having car trouble and informed the store manager on September 28, 1986 that he may not be to work the following day. The claimant did not show up for work anymore after that time. According to the employer, the claimant sent word with another employee that he would not be returning. When the claimant gave a written statement on November 10, 1986, he stated that he quit because he did not have transportation, and he found a job with a gin. The claimant stated during the hearing that he did not have another job when he quit the named employer, but did find work about a week later. He stated that his only reason for leaving was lack of transportation.
THE LAW
LRS 23:1634(B) limits our review to questions of law.
An individual shall be disqualified for benefits:
(1) If the administrator finds that he has left his employment ... without good cause connected with the employ-ment_ LRS 23:1601(1), in part.
All parties acknowledge that the employer was not obligated to furnish claimant transportation and that claimant voluntarily left his job and was not discharged.
The word “left” in LSA-R.S. 23:1601(1) is intended to cover those situations where an employee quits, or voluntarily leaves or resigns his employment.... Where claimant’s leaving his employment is not a factual issue, the issue of “leaving” and the meaning of the term “left” be *1386 come purely legal matters since they involve interpretation of law. Plunkett v. Adm’r, La. Office of Emp. Sec., 504 So.2d 106, 107 (La.App. 2d Cir.1987).
In Plunkett, we noted that “good cause connected with the employment” is a cause connected with a working condition which affects the employee’s ability to continue work. Mere dissatisfaction with working conditions is not good cause unless the dissatisfaction is based on a substantial change in ... working conditions that occurs after the claimant’s employment began. Supra, 504 So.2d at p. 108.
The district court relied on the assertions of counsel for the agency and cited Bateman v. Howard Johnson Company, 292 So.2d 228 (La.1974). Citing Bateman and other cases which we shall discuss, the agency contends here that it is
clearly and unequivocally established in Louisiana jurisprudence that where transportation is unavailable or available only at prohibitive cost, it may render the employment unsuitable, thus giving the employee good cause for leaving his employment.
This contention, also made by claimant, combines two distinct statutory concepts. Each case applying the principle contended, however, must stand on its own circumstances.
The words we have emphasized above in the contention of the agency and the claimant are two of the words used in LRS 23:1601(1) and (3). We place them, with the words in subsection (2), in the proper statutory context of § 1601:
An individual shall be disqualified for benefits:
(1) If the administrator finds that he has left his employment ... without good cause connected with his employment.
[[Image here]]
(2) If the administrator finds that he has been discharged ... for misconduct connected with his employment.
(3) If the administrator finds that he has failed, without good cause, ...to accept suitable work when offered him, or to return to his customary sei/employment, if any, when so directed by the administrator. ...
(a) In determining whether or not any work is suitable, the administrator shall consider ... the distance of the available work from his residence, ... LRS 23:1601, in part. Our emphasis.
The issue here presented is whether this claimant left his work “without good cause connected with his employment” under § 1601(1) and is not whether this claimant “failed to accept suitable work when offered him, or to return to ... self-employment” under § 1601(3). Even in circumstances where § 1601(3) may be read in conjunction with § 1601(1), subsection (3) should not control disposition of the subsection (1) issue of whether a claimant has left work “without good cause connected with his employment.” § 1601 is not ambiguous in the sense that it categorizes distinct and different circumstances under which, “if the administrator finds,” an “individual shall be disqualified for benefits.”
In addition to Bateman, supra, claimant and counsel for the agency here cite Boudreaux v. Louisiana Bd. of Review, Etc., 374 So.2d 1182 (La.1979), and Miller v. Administrator, Office of Employment, 468 So.2d 801 (La.App. 1st Cir.1985).
Ms. Bateman was a short order cook who had worked at a restaurant for a week, earning $1.93 per hour from 6 until 11 p.m. She apparently rode the city bus to work and relied on friends, co-workers and family for a ride home at 11 p.m. after the city bus ended its daily service. She last worked on a day when civil disturbances and racial unrest in Baton Rouge caused authorities to impose a 9:00 p.m. nightly curfew, the conditions and duration of which were not explained by the court. The curfew apparently made it impossible for Ms. Bateman to obtain transportation from work without paying for taxi service that cost $3.80 (or 40 percent of her salary). Ms. Bateman quit work after the first night of the curfew.
*1387 Boudreaux, supra, later considered the issue of unavailability of transportation at reasonable cost after claimant was transferred to a more distant place of work.
After being hired March 4, Boudreaux worked near his home until March 28 when he was transferred to work 48 miles away. On May 20, he requested a transfer to a closer work site. He worked at the distant site until June 9, quitting because no closer work was found. The court noted that the counsel for the agency requested that Bou-dreaux be found to have left his work with good cause connected with his employment.
Boudreaux purposefully did not reach the issue presented in this appeal. Bou-dreaux said:
We note that the referee did not rely on the employee’s affirmative response (“Yes”) to a general question which indicated that, at the time of his application for employment, he realized he could have been offered work at the Good Hope site. We thus do not reach the issue of whether it is nevertheless good cause connected with his employment for an employee to quit work from a $2.36 per hour job when transportation expenses become inordinate because of a transfer, even if the possibility of a transfer was realistically contemplated as an aspect of the employment at the time of the initial hiring. Boudreaux, supra, fn. 2 at p. 1183. Our emphasis.
The court, in Boudreaus;, explained its holding in Bateman in this language:
We held [in Bateman ] that, under the circumstances there reflected, the reason for quitting work was not merely a personal ... one.
In reaching this conclusion, we relied upon [§ 1601(3) ] which provides that an employee should not be disqualified for refusing to accept employment offered which is not “suitable” because of the distance of the available work from his residence_ In substance, we held that it is good cause connected with employment for an employee to quit his job when the work becomes unsuitable within the meaning of the statute due to unanticipated working conditions. See also, to same effect, Haskett v. Brown, 165 So.2d 25 (La.App. 2d Cir.1964), when the change in transportation availability after initial hiring made the employment unsuitable and, therefore, a good cause connected with the employment for resigning from the work. 374 So.2d at 1183-4.
Miller v. Administrator, Office of Employment, supra, deemed Bateman and Boudreaus; “similar” and controlling. We do not. Miller took six months medical leave during which her auto was repossessed. She convinced the authorities there that she could not return to work because the only available transportation was taxi service at a cost of $12-13 per day. Ms. Miller’s reported circumstances, however did not indicate that her transportation to and from work were contemplated as a “working” condition by her and her employer when she was hired. Ms. Miller’s financial difficulty and loss of her vehicle, however regretable and unfortunate, were not, in our opinion, “connected with her employment,” and would not have convinced us.
Unlike Boudreaus;, this claimant was not transferred, after being hired, from nearby to more distant work and there was no change after initial hiring in his working conditions. Boudreaus; concluded:
In the absence of a finding that the initial employment agreement specifically contemplated that the employee provide transportation for himself to a work-site 48-miles round-trip from his home, the plaintiff left his job for good cause connected with his employment. 374 So.2d at 1184. Our emphasis.
The court further explained that its opinion was based on these circumstances:
the plaintiff’s employment at $2.36 per hour; his transfer to a post 48-miles round-trip from his home after his initial employment; and the unavailability at reasonable cost of adequate available transportation to his changed and far *1388 more distant work-site. Ibid., our emphasis.
Haskett, cited in Bateman and in Bou-dreaux, had the finding that was notably “absent” in Boudreaux. There, this court noted:
“[Haskett] had been working for Matthews Lumber Company for several years [three years] ... he had been employed by Gathright, a foreman ... who lived in Shreveport; ... it was understood at the time of his employment he would daily ride with the foreman from his home in Shreveport to the ... mill in Mansfield; [and] ... that it was a part of the contract of employment he would be furnished such transportation free of charge. ... if he had to provide his own transportation it would not be economically feasible because his wages were small and his work ... irregular. ...
Of course many cases are cited to the general effect that where the contract does not otherwise provide, it is the duty of the employee to furnish his own transportation to and from work. We have no quarrel with this statement of the law, but we simply assert that it has no application to the case at bar....
Under these circumstances ... the employee was justified in terminating his employment [after Gathright was fired]_” 165 So.2d at p. 26. Our emphasis.
As Boudreaux strongly suggests, Ms. Bateman’s work became unsuitable because the nightly curfew that was imposed after she was hired was deemed an unanticipated working condition that could not be overcome by either the employee or the employer and it was not economically feasible for her to continue working. 374 So.2d at 1183. In that context, a change in circumstances, not attributable to the employee, after the employment was contracted was found to have been connected with the employment in Bateman, in Boudreaus;, which explained and placed Ms. Bateman’s circumstances in the proper context, and in Haskett.
The other cases cited in Bateman to support the result must also stand on their own facts. Immel v. Brown, 143 So.2d 156 (La.App. 3d Cir.1962), ordered a remand for evidence relating to the safety of a female employee who rode a public bus when she got off work at 11 p.m. in an area that was or was becoming increasingly unsafe. Johnson v. Administrator, Division of Employ. Sec., 166 So.2d 366 (La.App. 3d Cir.1964), deemed the offered job was unsuitable because of substantially lower wages, and Brown v. Brown, 153 So.2d 190 (La.App. 2d Cir.1963), concerned whether the working conditions were “intolerable” because of long hours and low wages.
Since Boudreaux, other cases have considered the issue in various contexts and have not applied the principle claimant and counsel for the agency urge us to apply.
In Hurst v. State, 394 So.2d 1279 (La. App. 1st Cir.1981), Bateman and Bou-dreaux were cited and distinguished. Hurst took a job 45 miles away from his home, contemplating that he would create a car pool. He did not succeed and quit his work two months later. The court found Hurst was aware of the distance when hired and his failure to create a car pool was not an unanticipated working condition.
Pegues v. Office of Emp. Sec., 430 So.2d 375 (La.App. 3d Cir.1983), followed Hurst. Ms. Pegues was denied unemployment benefits after she married and moved some distance away to her husband’s home. She commuted via car pool and resigned after the car pool was discontinued. Pegues’ failure to find another car pool was termed unfortunate but not good cause connected with her employment.
In Joshua v. State, Office of Employment Sec., 460 So.2d 714 (La.App. 3d Cir. 1984), Joshua quit one job for another with higher pay and less travel. Dissatisfaction with compensation was held not good cause. The court emphasized that distance and cost of transportation would not constitute good cause because Joshua was aware of travel requirements when he accepted the job.
*1389 Benefits were denied in Schaeffer v. State Bd. of Review, Emp. Sec., 462 So.2d 250 (La.App. 4th Cir.1984). Schaeffer quit his job for another because he tired of traveling and heard a rumor the company was going to be sold. These reasons for leaving were found not based on a change in working conditions, but were personal.
This court in Plunkett, supra, denied benefits on the determination that Plunkett quit voluntarily without good cause. Plunkett, who worked some distance from home, had to share his one car with his wife. This “problem” was found to be personal and not connected with his work.
The principle recognized in Haskett, Bateman, and Boudreaux, is yet applicable, however, in proper circumstances. See La. Dept. of Corr. v. Admin., La. O.E.S., 457 So.2d 825 (La.App. 1st Cir.1984), which is analogous to Haskett. Although that case involved transportation to and from a distant prison site, it was the change from an 8-hour to a 12-hour shift that was emphasized and found to be “good cause” for that claimant to leave her job at the prison. Compare also the circumstances presented in the many cases summarized and discussed in Annotation: Eligibility for Unemployment Compensation as Affected by Voluntary Resignation Because of Change of Location of Residence, 21 ALR 4th 317 (1983), as supplemented.
CONCLUSION
The circumstances of this case lead us to draw these conclusions: No change in the working conditions or the employment agreement of this claimant occurred after he began work three months before he quit. Claimant accepted the employment 45 miles away from his home knowing that he would have to travel to and from work in his personal vehicle. Motor vehicles, whether old or new, sometime fail. In the absence of a contrary provision in an employment agreement, it is not an employer’s responsibility to maintain in operating condition the motor vehicle that an employee uses to go to and from work. The failure of claimant’s personal vehicle is attributable to claimant and is not to be deemed as a working condition or as a circumstance connected with the employment.
The principle pronounced in Boudreaux, Bateman, and Haskett does not compel a result different than that pronounced by the administrative agency, which in this case we find is supported by law and by sufficient evidence.
The district court, understandably on the request of counsel for the agency, erred in its judgment that this claimant left his work with good cause connected with his employment. The claimant’s work was suitable, but his personal motor vehicle, after three months use, was not.
Accordingly, we reverse the judgment appealed and hereby render judgment affirming the ruling of the agency’s Board of Review.
REVERSED AND RENDERED.