MARTIN BATEMAN, APPELLANT, v. BOARD OF REVIEW, DEPARTMENT OF LABOR & INDUSTRY, STATE OF NEW JERSEY, AND UNITED STATES POSTAL SERVICE, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted November 6, 1978—Decided November 21, 1978.

Before Judges CONFORD and PRESSLER.

Mr. *Michael R. Bateman,* attorney for appellant.

Mr. *John J. Degnan,* Attorney General of New Jersey, attorney for respondent, Board of Review, Department of Labor and Industry (Mr. *Michael S. Bokar,* Deputy Attorney General, of counsel; Mr. *Ivan J. Punchatz,* Deputy Attorney General, on the statement in lieu of brief).

Mr. *Donald J. Volkert, Jr.,* Chief of Civil Division, Assistant United States Attorney, attorney for respondent, United States Postal Service (Ms. *Mary Catherine Cuff,* Deputy Attorney General, and Mr. *Anthony W. DuComb,* Assistant Regional Labor Counsel, of counsel).

PER CURIAM. Claimant was denied unemployment compensation benefits by a deputy examiner, and, on review, by both the Appeal Tribunal and the Board of Review. Hence this appeal.

Claimant Martin Bateman had been employed with the Railway Mail Service, a branch of the U. S. Post Office, for 35 years. He worked as a mail train foreman on the New York City-Washington, D. C. run. During that time the 6,000 railway post offices were reduced to one and claimant expected that his unit also would be phased out. That event ultimately occurred a year after he retired.

In 1947 claimant decided to move his family to Lakewood, New Jersey, a two-hour commute to New York City, the starting point of his run. Sometime during 1971 his work schedule was changed and his run commenced in Washington. Thus, rather than beginning and ending his tour in New York City, he had two deadhead runs each work period: one from New York to Washington at the beginning and one from Washington at the end. Each work period consisted of a two-day tour. Thus, five hours normally were required for claimant to get from home to the origin of each

work tour, and a similar period to return home. Claimant maintained that schedule from 1971 until he retired on July 9, 1976.

Claimant was eligible for retirement in 1971. He testified that at that time he could also have transferred to a stationary unit closer to home but only with a resulting loss of pay, grade, seniority and title. He said he therefore chose to continue in his job, hoping that it would be phased out; he would than have been entitled to transfer to another postoffice job without any of the above losses. When claimant finally put in for retirement, his personnel form showed: "Optional retirement: reason, age and service."

The Appeal Tribunal found that claimant left work for personal reasons, i. e., "voluntarily without good cause attributable to such work as the working conditions remained the same during the last five years of his employment." It therefore held him disqualified for unemployment compensation.

We read the agency tribunal's ruling as a holding that claimant's termination of his employment was not motivated by the disadvantageous commute he encountered every two days but by his desire to take advantage of his right under the applicable federal employment regulations to retire, presumably on pension. We regard that determination as supported by substantial credible evidence, and therefore requiring affirmance. When quitting, claimant did not indicate to his employer that he was doing so because of the commutation. Moreover, he had tolerated that condition for five years. The agency was entitled to discredit claimant's explanation that he did so only because he continually expected that the train mail service would imminently be phased out and that the commutation situation was the motivating cause for the quit.

The United States Postal Service relies upon two of our reported decisions seemingly holding that a quit because of commutation problems is ordinarily not compensable because

a factor personal to the employee rather than a condition attributable to the employment. *Morgan v. Bd. of Review,* 77 *N. J. Super.* 209, 214 (App. Div. 1962) ; *White v. Bd. of Review,* 146 *N. J. Super.* 268, 270 (App. Div. 1977). However, the language of these decisions, referring to the rule as one which obtains "ordinarily" or "usually," implies that a case could possibly be envisaged in which a sudden change in employment circumstances greatly increasing the commuting distance from home to job would properly be regarded as a condition attributable to the work rather than to the employee. The case before us might have been such a case if claimant had quit in 1971 when the change in place of work origin was instituted and claimant's commutation time for each two-day stint was increased from two hours to five hours.

Under the facts of record here and the proofs before the agency its decision must, for the reasons stated above, be affirmed.