ANNIE M. SELF, CLAIMANT-RESPONDENT, v. BOARD OF RE-VIEW, RESPONDENT-APPELLANT, AND BUILDING SERV-ICES CORPORATION OF NEW JERSEY, RESPONDENT.

CHARLOTTE PATTERSON, CLAIMANT-RESPONDENT, v. BOARD OF REVIEW, RESPONDENT-APPELLANT, AND BUILDING SERVICES CORPORATION OF NEW JERSEY, RESPONDENT.

Argued September 29, 1982—Decided December 14, 1982.

*Michael J. Haas,* Deputy Attorney General argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Michael S. Bokar,* Deputy Attorney General, of counsel).

*Cynthia J. Jahn* argued the cause for respondents (*Patrick N. Budd,* Director, Legal Aid Society of Mercer County, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

The basic question on these two appeals is whether employees who are unable to get to work because of lack of transportation have "left work voluntarily without good cause attributable to such work." *N.J.S.A.* 43:21–5(a). If so, they are not eligible for unemployment compensation. The Board of Review determined that the inability of the employees to obtain transportation was a personal reason for leaving work. Consequently, the Board disqualified them from unemployment compensation benefits. In both cases, the Appellate Division reversed the Board of Review. The opinion of the Appellate Division in *Self v. Board of Review* is reported at 182 *N.J.Super.* 361 (1981); the *Patterson* decision is unreported. We reverse the judgments of the

Appellate Division in both cases, thereby reinstating the decisions of the Board of Review.

## I

Claimants, Charlotte L. Patterson and Annie Marie Self, were employees of Buildings Services Corporation and worked at a corporate facility in Skillman, New Jersey. Patterson was a supervisor and Self was a maintenance worker on the 4:00 p.m. to 12:00 a.m. shift. Self performed cleaning and custodial work and Patterson was a "lead person" whose duties included starting the shift of workers. Both claimants acknowledged that their ability to provide transportation from their homes in Trenton to Skillman, a distance of about 20 miles, was a condition of their employment. Public transportation between Trenton and Skillman was unavailable. Patterson drove Self to work in Patterson's car until the car became inoperable. Thereafter they rode with another employee until December 18, 1979, when that employee quit.

On that date, Patterson and Self called their supervisor, Michael Klank, to say they could not get to work. They called again on December 19 to report their continuing inability to obtain transportation. Thereupon, Klank told them he would have to replace them. On his "termination report," Klank noted that both employees had "quit" and that the reason was "no transportation." That notation is consistent with Patterson's testimony that transportation was available "[u]ntil I got ready to quit in December, December 18."

Although Patterson and Self testified that Klank told them they could go to the Unemployment Office, Klank denied making that statement. Previously Self had left employment with Building Services because of transportation problems, and she had been rehired only after assuring her employer that she had transportation to and from work. Although Building Services was willing to rehire them if they could obtain transportation, claimants acknowledged that transportation was not available.

Neither requested a leave of absence, and both have found other employment.

Patterson and Self filed claims for unemployment compensation benefits, but the Deputy of the Division of Employment and Disability Insurance rejected both claims. On appeal within the Division, the Appeal Tribunal conducted a hearing and affirmed the denial of benefits. Similarly, the Board of Review affirmed the decision of the Appeal Tribunal. The Board found that

[t]here is no dispute that both claimants were without transportation to work, hence, it is clear that they could not meet the conditions of employment. No projection was made that their absence from work would be of a short duration. The fact that the employer advised them that they would be replaced if they could not report for work does not alter the fact that the claimants, by their lack of transportation to work, initiated the chain of events which led to their separation.

Underlying that decision was the rule announced by the Appellate Division twenty years ago: "An employee's problem of commuting to and from his work may be considered a good personal reason for leaving his employment, but it is not ordinarily to be considered a cause that is connected with or attributable to the work. Commuting is usually considered a problem of the employee." *Morgan v. Board of Review, Div. of Employment Sec.,* 77 *N.J.Super.* 209, 214 (1962).

II

Prior to 1961, *N.J.S.A.* 43:21–5(a) did not disqualify individuals who left work for good personal reasons from receiving unemployment compensation benefits. As explained in *Krauss v. A. & M. Karagheusian,* 13 *N.J.* 447, 464 (1953): "The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so, the termination of his employment is involuntary for the purposes of the act." *See also Berry, Whitson & Berry v. Division of Employment Sec., Dep't of Labor & Indus.,* 21 *N.J.* 73 (1956). In 1961, however, the Legislature amended the statute to disqualify claimants who

leave work "voluntarily without good cause attributable to such work." The effect of the 1961 amendment was to eliminate the eligibility of persons who leave work for good, but personal, causes. *See, e.g., Rider College v. Board of Review,* 167 *N.J.Super.* 42, 46 (App.Div.1979); *Morgan v. Board of Review, supra,* 77 *N.J.Super.* at 213. With the approval of the Appellate Division, the Board of Review has consistently ruled that those who leave work due to transportation difficulties are included in this category of ineligibles. *See, e.g., Morgan v. Board of Review, supra,* 77 *N.J.Super.* 209 (employee quit because she qualified for a pension and because commuting was aggravating; held, the aggravation of commuting was not good cause attributable to her employment); *White v. Board of Review,* 146 *N.J.Super.* 268 (App.Div.1977) (parolee without a car was required as a condition of parole to move to her home 38 miles from her place of employment; held, her commuting problem was personal and she was ineligible for benefits). That interpretation by the agency administering the statute should be accorded great weight by the courts. *Peper v. Princeton University Bd. of Trustees,* 77 *N.J.* 55, 69–70 (1978).

Previously we have held that the purpose of the New Jersey statute "is to differentiate between (1) a voluntary quit with good cause attributable to the work and (2) a voluntary quit without good cause attributable to the work." *DeLorenzo v. Board of Review,* 54 *N.J.* 361, 363 (1969); *see Stauhs v. Board of Review,* 93 *N.J.Super.* 451, 457 (App.Div.1967). From that perspective, a departure not attributable to work is a "voluntary departure without good cause related to work" that will disqualify the employee from receiving unemployment benefits. *DeLorenzo v. Board of Review, supra,* 54 *N.J.* at 363. The only recognized exception to that rule is where an employee is unable to work because of illness and attempts to protect her employment. *Id.* at 364. However, the present case does not fit within that exception. Claimants' problem was not a physical inability to work, but the failure to obtain transportation to their place of employment. We are compelled by the statute and the findings

of the administrative agency to recognize the termination of their employment as voluntary.

In reviewing similar statutes, a clear majority of courts in other jurisdictions also have concluded that leaving work because of transportation difficulties is a voluntary quit. *See, e.g., Tackett v. Administrator, Unemployment Comp. Act,* 29 *Conn. Supp.* 251, 282 *A.2d* 582 (Conn.Super.1971); *Gray v. Dobbs House, Inc.,* 171 *Ind.App.* 444, 357 *N.E.2d* 900, 905 (1976); *Toothaker v. Maine Employment Sec. Comm'n,* 217 *A.2d* 203 (Me. 1966); *Hill v. Contract Beverages, Inc.,* 307 *Minn.* 356, 240 *N.W.* 2d 314, 316 (1976); *Putnam v. Department of Employment Sec.,* 103 *N.H.* 495, 175 *A.2d* 519 (1962); *Moya v. Employment Sec. Comm'n,* 80 *N.M.* 39, 450 *P.2d* 925, 926 (1969). *Cf. Zorrero v. Unemployment Ins. Apps. Bd.,* 47 *Cal.App.3d* 434, 120 *Cal.Rptr.* 855, 858 (Ct.App.1975) (claimant's truck broke down, depriving him of private means of transportation and forcing him to take a two-hour bus trip; held, onerous trip not good cause to quit job); *Copeland v. Oklahoma Employment Sec. Comm'n,* 197 *Okl.* 429, 172 *P.2d* 420, 423 (1946) (where unemployed claimant is unable to provide any transportation, he is not available for work and thus is precluded from collecting benefits). *But see Bateman v. Howard Johnson Co.,* 292 *So.2d* 228 (La.1974) (where transportation is unavailable, or available only at a prohibitive cost, employment may thereby be rendered unsuitable); *Raytheon Co. v. Director of Div. of Employment Sec.,* 364 *Mass.* 593, 307 *N.E.2d* 330 (1974) (claimant who lost transportation left work for purely personal reasons; however, she did so involuntarily); *Lyons v. Appeal Bd. of Mich. Employment Sec. Comm'n,* 363 *Mich.* 201, 108 *N.W.2d* 849, 854–55 (Mich.1961) (where employee was laid off, then accepted employment 273 miles away, but was forced to quit after two and one-half weeks due to insurmountable transportation problems, termination was not voluntary). Thus, the Appellate Division holdings in *White* and *Morgan* are in harmony with the majority approach.

Our dissenting colleague not only disregards the prevailing interpretation of the law, but also rejects the factual findings of

the Board. As previously indicated, the Board found that "claimants, by their lack of transportation to work, initiated the chain of events which led to their separation." In reviewing that finding, we are limited to determining whether it is supported by the record. *Goodman v. London Metals Exchange, Inc.,* 86 *N.J.* 19, 28–29 (1981). If the factual findings of an administrative agency are supported by sufficient credible evidence, courts are obliged to accept them. *See id.; Jackson v. Concord Co.,* 54 *N.J.* 113, 117–18 (1969). Our dissenting colleague does not contend that the record fails to support the factual findings of the agency. Rather, he disagrees with those findings. His attempt to substitute his judgment for that of the agency contravenes well-established principles of judicial review.

The remaining issue is whether the unavailability of transportation is "good cause attributable to" employment as contemplated by the statute. Relying on *Bateman v. Board of Review,* 163 *N.J.Super.* 518 (App.Div.1978), the Appellate Division concluded that the inability to obtain transportation was not personal, but work-related. That reliance was misplaced. In *Bateman,* the employee lived in Lakewood and was employed on a mail train that ran between New York, two hours away, and Washington, D.C. The start of the mail run was changed from New York to Washington and the claimant was obliged to travel for an additional three hours each way between those cities. Claimant remained on the job for five years, after which he retired "presumably on pension." *Id.* at 520. Accordingly, the Appellate Division affirmed the agency's holding that claimant left work not because of the inconvenient commute, but simply to claim his pension. Nonetheless, the court noted:

that a case could possibly be envisaged in which a sudden change in employment circumstances greatly increasing the commuting distance from home to job would properly be regarded as a condition attributable to the work rather than to the employee. The case before us might have been such a case if claimant had quit in 1971 when the change in place of work origin was instituted and

claimant's commutation time for each two-day stint was increased from two hours to five hours. [*Id.* at 520–21 (dictum)].

The *Bateman* dictum is distinguishable from the present case. By changing the start of the mail run, the employer in *Bateman* required the employee to begin work at a new facility. It was as if the employer had moved from New York to Washington. In the present case, the employer did nothing to increase the commuting problems of claimants. In short, the reason they were unable to get to work was not work-related, but personal. Thus, the lack of transportation was not "good cause attributable to" their employment within the purview of the statute.

To summarize, unemployment compensation is a benefit conferred by the Legislature, which has declared the limits of the entitlement to that benefit. One such limitation is that employees are disqualified if their employment is terminated because personal transportation problems prevent them from getting to work. We do not suggest that the Legislature is prevented from devising a different statutory scheme, one in which personal commuting problems would constitute good cause attributable to the work of the employee. Our decision merely recognizes that the Legislature has designed a structure in which employees who leave work because of commuting problems are not entitled to unemployment compensation. The fundamental fallacy in the Appellate Division opinion, continued in the opinion of our dissenting colleague, is the failure to recognize the legislative intent, which has been confirmed by twenty years of consistent administrative and judicial interpretation.

The judgments of the Appellate Division are reversed.

O'HERN, J., dissenting.

There is a difference between quitting and being fired from a job. Only in the regulatory world do the concepts get confused.

The fact is that these two claimants didn't quit their jobs. They were fired after they couldn't get to work for two days because they had lost their ride. No reading of this record will disclose evidence to support a contrary finding. *See Zielenski v. Bd. of Review, Div. of Emp. Sec.,* 85 *N.J.Super.* 46, 54 (App.Div. 1964). Their supervisor, who described one as a "very hard worker and invaluable employee," told it as it was. When asked whether claimants were "discharged or did they leave voluntarily," he answered:

A They didn't leave voluntarily. I didn't have any choice. I have a building to take care of and if an employee doesn't come in, two or three days at a clip, I don't have any choice. Do you want me to say yes, I fired them? I had no other choice, which of course they had no control over it [sic].

The supervisor knew he had fired the claimants.[1] In fact, they testified that he was the one who told them to apply for unemployment insurance. These claimants were hardworking building maintenance employees. They wanted work, not a handout. Had they been given a few days to arrange transportation, they might have been able to return to work. Under these circumstances, only a legal fiction of Kafkaesque subtlety can convert their discharge into a voluntary quit.

Of course I recognize that unemployment compensation benefits should not be available to a worker who, as a matter of choice, leaves a job because it is inconvenient to commute or the worker has moved. *White v. Bd. of Review, Div. of Emp. Sec.,* 146 *N.J.Super.* 268 (App.Div.1977); *Morgan v. Bd. of Review, Div. of Emp. Sec.,* 77 *N.J.Super.* 209 (App.Div.1962). That was not the case here. The Appellate Division viewed the matter properly when it concluded in Self's case:

---

[1] Included in the claimants' Appellate Division Appendix is a memorandum dated March 29, 1980 (after the Board of Review Hearing) in which the supervisor wrote:

To Whom It May Concern:

Subject: Anne Marie Self

This is to inform you that Anne Marie Self is no longer in the employ of J & J Private Contractors. She has been terminated, *fired.* (Emphasis in original).

We view the matter differently, however, when as here the change in circumstances renders the ability to get to work not more difficult but, rather, virtually impossible of achievement. If there are no reasonably feasible means of traveling to work, then the employee has no choice of whether or not to go to work. And without choice, one's action is, by definition, not voluntary but compelled. Claimant here did not voluntarily quit her job. She was unable to get to it for reasons for which she was not responsible and, as a matter of fundamental fairness, for which she should not be held responsible. [182 *N.J.Super.* at 363–64].

Nor in the *Patterson* case would I disqualify the claimant because of her use of the word "quit" at her hearing. More telling and realistic was her letter to the Board of Review:

The next day I called Mr. Klank again and he informed me to go down and file for unemployment. Now I ask you does that sound as though I quit on my own to you, or not. How can I go back to a job when the supervisor tells me I am no longer needed and then puts on the form sent to him from unemployment Quit.

I would not take comfort in the number of jurisdictions that appear to hold claimants disqualified for lack of transportation. I would rather stand with the Supreme Judicial Court of Massachusetts, which has interpreted its own statute in this way:

[T]he District Court was in error in ruling that Mrs. Miller's departure was voluntary. As the board found, "The claimant exhausted all reasonable means to preserve her employment, indicating her desire and willingness to continue her employment; that when all alternative courses of action to find other transportation or change to another shift were unsuccessful, she involuntarily left her work." She is therefore not subject to disqualification .... [*Raytheon Co. v. Director of Div. of Emp. Sec.,* 364 *Mass.* 593, 597, 307 *N.E.*2d 330, 333 (Mass.Sup.Jud.Ct.1974) ].[2]

---

[2] *See also Aronson v. Montefiore Hosp. & Medical Center,* 36 *N.Y.*2d 891, 372 *N.Y.S.*2d 644, 334 *N.E.*2d 594 (N.Y.Ct.App.1975), rev'g on dissent, 43 *A.D.* 2d 628, 349 *N.Y.S.*2d 176 (N.Y.App.Div.1973) (employee granted benefits where she resigned after three episodes of physical abuse on subway en route to work [factual determination of "good cause" by Board should be upheld] ); *Bateman v. Howard Johnson Co.,* 292 *So.*2d 228 (La.Sup.Ct.1974) (cited by majority); Baxter & Farrell, "Constructive Discharge—When Quitting Means Getting Fired," 7 *Employee Rel. L.J.* 346, 347 (Winter 1981–82) ("... courts examine the circumstances surrounding the employee's decision to quit or resign. If the decision was forced on the employee, the courts will deem it a constructive discharge and will treat the employee as if he or she had been explicitly and directly discharged....").

The majority's decision is also inconsistent with this Court's analysis in *DeLorenzo v. Bd. of Review, Div. of Emp. Sec.*, 54 *N.J.* 361 (1969). In that case the Court affirmed the Board's conclusion that in some circumstances failure to work because of illness does not constitute a "voluntary" leaving of work.

> The Board of Review does not now hold that a failure to report for work because of illness (not attributable to the work) is itself a voluntary quit which disqualified the employee for benefits after recovery, even though he seeks to return to the job and is refused work.

> The Board now holds that when an employee becomes ill and does those things reasonably calculated to protect the employment and, notwithstanding that she is not reinstated, there is no voluntary leaving of work. In these matters involving separation from employment for health reasons, the Board now holds that the disqualification arises only upon a finding that the employee, in fact, decided to terminate the employment because the work duties are detrimental to an existing physical condition or state of health which did not have a work connected origin. [*Id.* at 364].

It is anomalous to observe that if these two employees had been spending their days at the racetrack instead of at work, and had been terminated for that as misconduct under *N.J.S.A.* 43:21–5(b), they would have been disqualified from benefits for only five weeks.

The Appellate Division correctly concluded that an extraordinary case had been presented. Denying these claimants the remedial benefits of the Unemployment Compensation Law would subvert its purpose and deny protection against the adverse impact of involuntary unemployment. Justice Pashman once reminded us that cases that fly in the face of legislative purpose, humanity and common sense are "poor case[s] for deference to rigid rule application." *Dougherty v. Human Services Dep't*, 91 *N.J.* 1, 18 (1982) (Pashman, J., dissenting).

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER and POLLOCK—5.

*For affirmance*—Justice O'HERN—1.