**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2764-17T1

MERALIS IBARRA,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and ATLANTICARE REGIONAL
MEDICAL CENTER,

     Respondents.

_____

Submitted February 12, 2019 – Decided April 9, 2019

Before Judges Hoffman and Geiger.

On appeal from the Board of Review, Department of Labor, Docket No. 131,492.

Meralis Ibarra, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Alexis F. Fedorchak, Deputy Attorney General, on the brief).

Jill R. O'Keeffe, attorney for respondent AtlantiCare Regional Medical Center.

PER CURIAM

Claimant appeals from the January 5, 2018 final decision of the Board of Review (the Board) disqualifying her from receiving unemployment benefits after finding she left work voluntarily without good cause attributable to her work. Claimant argues that she did not voluntarily leave work, rather she was involuntarily terminated. Because the Board's determination is not supported by credible evidence, we reverse and remand for further proceedings.

From 2005 to 2017, claimant worked as a full-time patient care associate at AtlantiCare Regional Medical Center (AtlantiCare). In May 2017, Ibarra informed her supervisor, Kathleen Bogard, of her plan to enter nursing school, beginning on August 1, 2017, and requested a switch to a part-time day position, once school began. Initially, Bogard told claimant there were no part-time day positions available; however, she later advised her that a part-time position had opened up, beginning on August 20. Until that time, Bogard said she informed claimant she would need to find other employees to cover her shift or use vacation time for days when her school and work schedules conflicted.

AtlantiCare policy and practice requires employees notify their supervisor in advance and in writing when another employee is covering their shifts. To

request vacation time, employees must write down their requests multiple weeks in advance in a vacation book to ensure more than two employees with the same skills do not take off on the same day. AtlantiCare policy also provides that two consecutive "No Call/No Show" absences "will result in termination with no rehire status." A No Call/No Show absence is one "where the employee has failed to follow department call out procedure and has failed to report to work within two (2) hours of his/her start time."

Claimant was scheduled to work on August 2 and 3, weekdays when she had school. She entered into the scheduling system that she had school on these two days but did not submit requests to switch shifts or to use vacation days. Claimant did not show up for work on August 2. She claims she spoke by phone with a secretary and texted the scheduler on this day, requesting removal from the schedule; however, the secretary did not have authority to change the schedule, and the scheduler was on vacation.

On August 3, Ibarra once again did not show up to work. While in school, claimant received a text and call from Bogard advising her job was in jeopardy. Later that day, claimant met with Bogard and Greg Hamaty, AtlantiCare's Director of Human Resources, who terminated claimant for committing two consecutive No Call/No Show absences on August 2 and 3. Claimant petitioned

AtlantiCare's human resources department to review her termination and restore her employment, but the department found her termination appropriate.

Claimant subsequently filed for unemployment compensation. A deputy determined claimant was disqualified from benefits because she left work voluntarily. Claimant appealed to the Appeal Tribunal (the Tribunal), which affirmed the deputy's determination based on N.J.S.A. 43:21-5(a). In its findings of fact, the Tribunal found "the employer terminated the claimant's employment." However, in its opinion, the Tribunal concluded that "claimant initiated her separation" from AtlantiCare because her choice to attend school made her unable to work full-time hours even if she did intend to remain. In support of its conclusion, the Tribunal noted the Board has previously held, "In cases bordering between discharge and voluntary leaving, the one who initiates that action which eventually leads to the separation is the one who is responsible for breaking the employer-employee relationship." After the Board affirmed the Tribunal's decision, claimant filed this appeal.

Our review of administrative decisions is limited. In re Stallworth, 208 N.J. 182, 194 (2011). We will not reverse an agency's decision unless it is arbitrary, capricious, or unreasonable. Ibid. Agency action is arbitrary, capricious, or unreasonable if the record does not contain substantial credible

evidence to support the findings on which the agency based its decision. Ibid. Additionally, when "an agency 'overlook[s] or underevaluat[es] . . . crucial evidence,' a reviewing court may set aside the agency's decision." Cottman v. Bd. of Review, 454 N.J. Super. 166, 171 (App. Div. 2018) (alterations in original) (quoting Trantino v. N.J. State Parole Bd., 166 N.J. 113, 192 (2001)).

New Jersey's Unemployment Compensation Law disqualifies a person from receiving unemployment benefits if he or she "left work voluntarily without good cause attributable to such work." N.J.S.A. 43:21-5(a). Thus, the threshold question under N.J.S.A. 43:21-5(a) is whether an applicant for unemployment compensation benefits left her job "voluntarily." If the separation from employment was voluntary, the applicant is eligible for unemployment compensation benefits only if that separation was for "good cause attributable to [the] work." N.J.S.A. 43:21-5(a); Utley v. Bd. of Review, 194 N.J. 534, 544 (2008). Only after the employee is determined to have left voluntarily does the court inquire into whether the employee left for good cause attributable to work. Ibid. See also Lord v. Bd. of Review, 425 N.J. Super. 187, 191 (App. Div. 2012) (declining to consider whether the employee had good cause to leave work because it first determined the employee did not leave work voluntarily).

The cases addressing whether an employee left work with good cause involved employees who had resigned voluntarily from their jobs and then claimed unemployment benefits. For example, in Utley, our Supreme Court evaluated whether an employee had good cause to resign after his employer scheduled him to work shifts when buses did not run. 194 N.J. at 537, 552. See also Domenico v. Bd. of Review, 192 N.J. Super. 284, 288 (App. Div. 1983) (holding that an employee had good cause to voluntarily quit her job because she had been assaulted at work).

Before us, claimant seeks reversal of the Board's decision, arguing that her separation from employment was not voluntary. We agree.

Firing does not constitute a voluntary departure from work, nor does compelled resignation. Lord, 425 at 191 ("If the supervisor had said, 'you're fired,' there would be no dispute that appellant's separation from employment was involuntary."). What controls is whether the employee intended to remain working.

In Lord, an employee's car died, rendering him incapable of driving to his job. Id. at 189. When apprised of this predicament, his employer told the employee he had to resign effective immediately. Id. at 190. Though he did not want to leave his job, the employee resigned and applied for unemployment

6

benefits. Ibid. In denying the employee's claim for benefits, the Appeal Tribunal provided the same rationale as provided in the case under review:

> The Board of Review has historically held that in cases bordering between discharge and voluntary leaving, the one who initiates that action which eventually leads to the separation is the one who is responsible for breaking the employer-employee relationship. Thus, the claimant left work because he was unable to obtain transportation to perform his job. This was a personal reason and was not attributable to the work.
>
> [Ibid.]

We reversed, finding that the employee was essentially fired despite the employer characterizing his leaving as a resignation. Id. at 192. We held the employee's de facto firing constituted an involuntary termination from employment, and thus concluded he was not disqualified for benefits under N.J.S.A. 43:21-5(a). Ibid.

Both the record and the decision of the Tribunal show that claimant was fired from her job. The Tribunal wrote in its findings of fact: "The claimant was a no call, no show. She did not inform the employer if she had traded shifts with a coworker, nor did she request those two days off in advance. As a result, the employer terminated the claimant's employment." (Emphasis added). The record also indisputably shows claimant was fired. At no point did claimant state she resigned or left voluntarily. The Board's brief also indicates that

7

claimant was fired and even includes the Disciplinary Action Notice, which states "[Claimant's] employment with AtlantiCare is being terminated effective Thursday, August 3, 2017 for violating AtlantiCare's attendance and lateness policy." In addition, Bogard, the supervisor who fired claimant, stated in the Tribunal hearing that she terminated claimant for violating the No Call/No Show policy.

Because claimant was indisputably fired from her job at AtlantiCare, she did not leave work voluntarily and should not be disqualified for benefits under N.J.S.A. 43:21-5(a). The fact that claimant was fired is clearer than in Lord or Villa, yet the Tribunal, in its opinion, characterized it as a case "bordering between discharge and voluntary leaving." This conclusion is not supported by the record. The record shows that claimant was fired, so her termination cannot be considered a voluntary departure from employment.

Furthermore, an employee's departure is voluntary only when the employee intends leave her job. Campbell Soup Co. v. Bd. of Review, 13 N.J. 431, 435 (1953). In Campbell Soup, employees who retired pursuant to a collective bargaining agreement that required them to retire at sixty-five years old applied for unemployment benefits. Id. at 433. Reversing the employees' disqualification, our Supreme Court held that N.J.S.A. 43:21-5(a) "was to be

limited to separations where the decision whether to go or to stay lay at the time with the worker alone and, even then, to bar him [or her] only if he [or she] left his work without good cause." Id. at 435. Because the employees "did not choose of their own volition to leave," but were compelled to by their employer, their departure was involuntary under N.J.S.A. 43:21-5(a). Ibid.

Campbell Soup demonstrates that an employee's intent to leave or remain working is dispositive, even if it is against the employer's interest to retain the employee. Here, claimant violated AtlantiCare policy and was fired for cause, but she did not intend to leave her position at AtlantiCare. Though she had entered a nursing program, claimant intended to remain a full-time employee for three weeks until she could switch to part time. Based on the record, this too is indisputable. Both claimant and her supervisor testified that claimant intended to use vacation time and switching shifts with other employees to cover the shifts that conflicted with her schooling, and then to switch to part-time so she could attend work and school simultaneously. Claimant's intent to remain employed is also evidenced by her attempt to gain reinstatement after she was fired. She begged her supervisor to reconsider when she was fired, and appealed her termination internally with AtlantiCare. Like the employees in Campbell Soup,

9

claimant did not choose to leave on her own volition but left upon the termination decision of her employer. Therefore, her departure was involuntary.

In disqualifying claimant from benefits, the Tribunal relied on Self v. Board of Review, 91 N.J. 453 (1982). In Self, two employees left work after their car died and they could not travel to work. Id. at 455. Disqualifying the employees for unemployment benefits, the Board stated, "[t]he fact that the employer advised them that they would be replaced if they could not report for work does not alter the fact that the claimants, by their lack of transportation to work, initiated the chain of events which led to their separation." Id. at 456. The court agreed with the Board, ruling that their leaving due to lack of transportation amounted to a voluntary quit. Id. at 458. The dissent, however, argued that the employees should not have been disqualified because the record clearly showed they were fired. Id. at 461. In response, the majority stated there was sufficient credible evidence in the record (based on employee testimony and the supervisor's termination report) to support the agency's finding that the employees quit. Id. at 455, 459.

At a glance, Self appears to conflict with Campbell Soup by holding that an employee leaves voluntarily from work if he or she initiates events which cause termination, even if the employee intends to remain employed. However,

<u>Self</u>'s holding actually pertains to the second element of <u>N.J.S.A.</u> 43:21-5(a): whether the employee left without good cause attributable to her work. The <u>Self</u> court determined the employees quit for personal reasons, not that they were fired for personal reasons. Thus, it is only appropriate to evaluate whether an employee initiated the action that led to her departure when it is first determined that the employee left voluntarily. Because, unlike in <u>Self</u>, the record contains no evidence that claimant quit or resigned, it does not support the denial of benefits here since the record clearly shows that AtlantiCare terminated claimant.

Adoption of the Tribunal's reasoning would effectively eliminate N.J.S.A. 43:21-5(b), which disqualifies employees "discharged for misconduct connected with the work" for only six weeks. When employees engage in misconduct that results in their termination, it is the employees' misconduct that technically initiates their eventual departure from employment. But N.J.S.A. 43:21-5(b) already contemplates such a scenario by providing that employees will be disqualified from benefits for six weeks when they are terminated for misconduct. The Board's affirmance of the opinion of the Tribunal would undermine the intent of the Legislature by denying benefits to employees

discharged for misconduct rather than the temporary denial provided in N.J.S.A. 43:21-5(b).

Because the Board did not base its findings on substantial credible evidence in the record and overlooked contrary evidence in reaching its conclusions, its decision was arbitrary, capricious, and unreasonable. The record lacks any evidence supporting its conclusion that claimant left work voluntarily; instead, the record contains substantial credible evidence showing claimant intended to keep her job at AtlantiCare, but was fired for violating AtlantiCare policy. Therefore, the Board erred in disqualifying Ibarra under N.J.S.A. 43:21-5(a).

Claimant might, however, be disqualified temporarily for benefits under N.J.S.A. 43:21-5(b) or disqualified fully under N.J.S.A. 43:21-5(i). N.J.S.A. 43:21-5(b) disqualifies individuals from benefits for only five weeks when "the individual has been suspended or discharged for misconduct connected with the work." N.J.S.A. 43:21-5(b) further defines "misconduct" as

> [C]onduct which is improper, intentional, connected with the individual's work, within the individual's control, not a good faith error of judgment or discretion, and is either a deliberate refusal, without good cause, to comply with the employer's lawful and reasonable rules made known to the employee or a deliberate disregard of standards of behavior the employer has a reasonable right to expect.

N.J.S.A. 43:21-5(i) disqualifies individuals from benefits:

[F]or any week in which the individual is a student in full attendance at, or on vacation from, an educational institution, as defined in subsection (y) of [N.J.S.A.] 43:21-19; except that this subsection shall not apply to any individual attending a training program approved by the division to enhance the individual's employment opportunities, as defined under subsection (c) of [N.J.S.A.] 43:21-4; nor shall this subsection apply to any individual who, during the individual's base year, earned sufficient wages, as defined under subsection (e) of [N.J.S.A.] 43:21-4, while attending an educational institution during periods other than established and customary vacation periods or holiday recesses at the educational institution, to establish a claim for benefits. For purposes of this subsection, an individual shall be treated as a full-time student for any period:

(1) During which the individual is enrolled as a full-time student at an educational institution, or

(2) Which is between academic years or terms, if the individual was enrolled as a full-time student at an educational institution for the immediately preceding academic year or term.

The record contains insufficient information to determine if N.J.S.A. 43:21-5(i) applies to claimant, and if so, its impact upon claimant's entitlement to benefits. We therefore reverse the final decision of the Board, and remand the case for the Board to consider whether claimant's entitlement to benefits is affected by N.J.S.A. 43.21-5(i), and if appropriate, for calculation of the amount of unemployment compensation benefits claimant should receive.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13