**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4664-17T4

CHRISTINE BERTOLINI,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR
and HOPEWELL TOWNSHIP
BOARD OF EDUCATION,

     Respondents.

_____

> Submitted August 13, 2019 – Decided August 20, 2019
>
> Before Judges Messano and Natali.
>
> On appeal from the Board of Review, Department of Labor, Docket No. 143,577.
>
> Christine Bertolini, appellant pro se.
>
> Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Aaron J. Creuz, Deputy Attorney General, on the brief).

Respondent Hopewell Township Board of Education has not filed a brief.

PER CURIAM

Christine Bertolini worked as a "one-on-one" teacher's aide for the Hopewell Township Board of Education (BOE) from October 17, 2016 through January 19, 2018. Bertolini resigned in writing on January 21, 2018, claiming she was subjected to "constant verbal and emotional abuse and taunting" during the prior year "because of [her] efforts in protecting a child with special needs from being emotionally abused and overlooked in his education[.]" The Deputy Director determined Bertolini was eligible for benefits. The BOE appealed, and the Appeals Tribunal (the Tribunal) conducted a telephonic hearing, at which Bertolini, Stephanie Kuntz, the Business Administrator and BOE Secretary, School Superintendent Meghan Lammersen, and Assistant Principal John Ogbin, testified.

During the 2016-17 school year, Bertolini was assigned to a student, C.B., who is autistic.[1] Bertolini said she reported to others how C.B. was "ignore[d] . . . [and] pass[ed] over" by the classroom teacher. In March 2017, she and C.B

---

[1] We use the child's initials to maintain confidentiality. C.B.'s mother, Cr.B., briefly testified at the hearing before the Tribunal. She said that other staff members to whom her son was assigned were "targeted" like Bertolini. However, Cr.B. admitted she had not witnessed any of this conduct.

were moved to another classroom with a different teacher, "[a]nd everything was great with that teacher." Bertolini moved to another classroom, with a different teacher and different student, for the 2017-18 school year. Nevertheless, she claimed she was "taunted" on daily basis, "laughed at," and whenever she "walk[ed] in a room, somebody walk[ed] out." School personnel failed to address her concerns, and she became the subject of false complaints about her performance.

Citing "the hostile work environment . . . [she had] repeatedly reported to [Lammersen] . . . Ogbin" and others, Bertolini resigned. Although Bertolini said the hostile work environment adversely affected her health, she did not produce any medical evidence supporting that assertion.

Kuntz testified she was unaware of Bertolini's "hostile work environment" claims until she received the resignation letter. Bertolini acknowledged never sending any complaints to Kuntz. Lammersen also denied knowledge and testified that Bertolini was assigned to another student for the 2017-18 school year in the usual course, because "the instructional aides are reassigned to different students based on scheduling needs. They're never placed with the . . . same student year after year." Lammersen was "shock[ed]" to receive Bertolini's letter of resignation. Ogbin was aware of only one complaint

Bertolini made in an email dated September 25, 2017. That complaint dealt with a teacher's criticism of Bertolini's supervision of a child on the school playground.

The Tribunal concluded Bertolini's contention of being taunted because of her support for C.B. was "irrelevant," because Bertolini was no longer assigned to the student after the 2016-17 school year, although she "ke[pt] herself involved in the happenings of the student even after she was taken out of the classroom with the student." It also found that Bertolini never "took her specific personal concerns to the employer prior to her resignation letter to afford them the opportunity to rectify her situation." The Tribunal concluded Bertolini's reasons for resigning were insufficient, and she failed to provide any proof of a medical condition caused by or aggravated by the workplace. It concluded Bertolini "left work voluntarily without good cause attributable to [the] work." The Board affirmed the Tribunal's findings and conclusion, and this appeal followed.

Bertolini argues that the Tribunal failed to consider evidence she offered to support her claim and erred in accepting "conflicting statements" offered by the BOE. We disagree and affirm.

A-4664-17T4

"The judicial capacity to review administrative agency decisions is limited." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). "[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. (first alteration in original) (quoting Charatan v. Bd. of Review, Dep't of Labor, 200 N.J. Super. 74, 79 (App. Div. 1985)). "If the Board's factual findings are supported 'by sufficient credible evidence, [we] are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, Dep't of Labor & Indus., 91 N.J. 453, 459 (1982)). Only if the Board's action was arbitrary, capricious, or unreasonable should it be disturbed. Ibid.

N.J.S.A. 43:21-5(a) disqualifies an individual from receiving unemployment benefits for a period if "the individual has left work voluntarily without good cause attributable to such work." "In applying [N.J.S.A.] 43:21-5(a), a court must 'differentiate between (1) a voluntary quit with good cause attributable to the work and (2) a voluntary quit without good cause attributable to the work.'" Brady, 152 N.J. at 213-14 (quoting Self, 91 N.J. at 457). Although "good cause" is undefined, the Court has stated:

> The test of "ordinary common sense and prudence" must be utilized to determine whether an employee's

A-4664-17T4

decision to leave work constitutes good cause. Such cause "must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." A claimant has the "responsibility to do whatever is necessary and reasonable in order to remain employed."

[Id. at 214 (citations omitted).]

"Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute good cause for leaving work voluntarily." Domenico v. Bd. of Review, Dep't of Labor & Indus., 192 N.J. Super. 284, 288 (App. Div. 1983) (quoting Medwick v. Bd. of Review, Dep't of Labor & Indus., 69 N.J. Super. 338, 345 (App. Div. 1961)). The claimant bears the burden of proving good cause. Brady, 152 N.J. at 218.

Bertolini contends that the Tribunal, and, in turn, the Board, ignored evidence she provided that documented the taunting and harassment she endured. It is fair to say the documents supplied in appellant's appendix demonstrate a tense relationship between Bertolini and the teacher assigned to C.B. during the 2016-17 school year. Bertolini testified, however, "everything was great" after she moved to another teacher's classroom in March 2017.

Ogbin and Kuntz were copied on a June 2017 email from this successor teacher that demonstrates her concerns about other staff members' "obsession" with C.B., his aide, which we assume was Bertolini, and the successor teacher's

6

"classro[o]m activities, . . . procedures, . . . conduct and responsibilities as a teacher[.]"

However, the record contains only two emails sent by Bertolini during the 2017-18 school year. One was the September 2017 email Ogbin referenced in his testimony. It does not mention C.B., reflects Bertolini's request for "clarification and guidance" regarding her duties with her new student and inquires whether, given prior false reports by "a few teachers," she was the subject of a complaint from a teacher that would be recorded in her "performance file."

Another, from December 2017, deals with Bertolini's dissatisfaction with the processing of her workers' compensation claim. In that email, Bertolini complains about having been placed with a student whose violent tendencies were known. The email was not directed to Kuntz, Lammersen or Ogbin.

In short, there is little in the record, except for Bertolini's self-serving testimony, that demonstrates more than her "[m]ere dissatisfaction with working conditions" immediately prior to her January 2018 resignation. Domenico, 192 N.J. Super. at 288. Additionally, her claims that the stress of the workplace caused her adverse medical consequences were unsubstantiated. N.J.A.C. 12:17-9.3(d) provides that "[w]hen an individual leaves work for health or

7

medical reasons, medical certification shall be required to support a finding of good cause attributable to [such] work." Absent such unequivocal medical evidence, the decision to terminate her employment is deemed to be without good cause attributable to the work. Wojcik v. Bd. of Review, Dep't of Labor & Indus., 58 N.J. 341, 344 (1971).

Bertolini also contends the Board credited the contradictory testimony of the BOE's representatives regarding their lack of knowledge of any "hostile work environment." However, the Tribunal and the Board found those representatives to be credible. "The appellate court must also give due regard to the opportunity of the one who heard the witnesses to judge their credibility." Logan v. Bd. of Review, Dep't of Labor, 299 N.J. Super. 346, 348 (App. Div. 1997) (citing Jackson v. Concord Co., 54 N.J. 113, 117 (1969)).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION