**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4981-17T3

ALEXANDRA M. SALAS,

       Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and PRECISION METAL
MACHINING, INC.,

       Respondents.

_____

Argued November 20, 2019 - Decided December 13, 2019

Before Judges Mayer and Enright.

On appeal from the Board of Review, Department of Labor, Docket No. 074,750.

Sara Z. Cullinane argued the cause for appellant (Sara Z. Cullinane, attorney; Alexandra Salas, on the pro se briefs).

Rimma Razhba, Deputy Attorney General, argued the cause for respondent Board of Review (Gurbir S. Grewal, Attorney General, attorney; Donna Arons,

Assistant Attorney General, of counsel; Aimee Blenner, Deputy Attorney General, on the brief).

Respondent Precision Metal Machining, Inc. has not filed a brief.

PER CURIAM

Appellant Alexandra M. Salas appeals from a May 21, 2018 decision by respondent Board of Review (Board) disqualifying her for receipt of unemployment benefits. We affirm.

Salas worked for respondent Precision Metal Machining, Inc. (PMMI) as a metal polisher from 2004 until July 13, 2012. In the performance of her job, she used a chemical which, over time, caused her to develop a skin rash. Salas was able to control the rash with medication. She claimed she notified PMMI of her condition in December 2011. PMMI's Director of Operations denied being told about the rash.

In mid-2012, Salas became pregnant. She feared the medication used to control her rash would harm her unborn child and elected to discontinue it during her pregnancy. In July 2012, Salas obtained a note from a certified nurse midwife, suggesting Salas "get a [t]ransfer, even temporary while she [was] pregnant, to decrease the effect on her pregnancy." The nurse midwife did not causally connect Salas's rash to the chemical at PMMI's facility. Nor did the

nurse midwife state Salas was unable to take any medication or treatment for her skin condition while she was pregnant. Salas did not provide a medical note from the doctor who treated her skin rash.

Salas provided the nurse midwife note to PMMI and met with PMMI's management. At this meeting, Salas claimed PMMI's representative mentioned the possibility of disability or layoff. PMMI denied any such discussion. PMMI offered Salas "a temporary job in a self-contained quality controlled clean room without any change in pay or hours."

Initially, Salas accepted the job in PMMI's quality controlled clean room. However, after speaking with her husband immediately after she accepted the alternate position, Salas abruptly resigned from the company. Salas claimed she would have been exposed to the same irritating chemical if she worked in the quality controlled area because she had to cross the factory floor to enter or exit the building and use the bathroom. Salas admitted she did not tell PMMI that she would have accepted an office job in lieu of the position in the quality controlled clean room. PMMI's office has a separate entrance to the building that would not have required Salas to enter through the factory.

Salas applied for unemployment benefits. Initially, the Board's deputy awarded unemployment benefits, determining Salas left her job "because the

work was adversely affecting [her] health." PMMI appealed. The Appeal Tribunal (Tribunal) held Salas was disqualified from receipt of benefits as of July 8, 2012 because she left work voluntarily without good cause attributable to such work.[1] The Tribunal also concluded PMMI presented an alternate job position to address Salas's medical condition and "that Salas 'failed to accept the offered [position] and never discuss[ed] the matter with her physician regarding the accomodations,' instead, choosing to leave her employment." Salas I, slip op. at 1.

As a result of Salas II, the Board conducted a hearing on April 20, 2018 and heard testimony from Salas, a representative of PMMI's management, and PMMI's Director of Operations. The Board also considered two expert reports supplied by Salas and the July 2012 note from her nurse midwife.

In a May 21, 2018 decision, the Board denied unemployment benefits because Salas left work voluntarily "without good cause attributable to the work." The Board doubted Salas's contention that the quality controlled clean room "would not meet her needs because she had worked a few times in this part

---

[1] The procedural history related to appeals filed prior to the Board's May 21, 2018 decision are not relevant to our review of appellant's contentions on this appeal. See Salas v. Bd. of Review, No. A-3077-13 (App. Div. Oct. 15, 2015) (Salas I) and Salas v. Bd. of Review, No. A-1189-16 (App. Div. Jan. 29, 2018) (Salas II) (ordering a remand to the Board to conduct a hearing).

of the plant and had experienced allergic reactions." The Board determined that on the occasions when Salas worked in the quality controlled clean room, she also worked her regular job in the factory and therefore she could not differentiate which area of the workplace caused her symptoms.

The Board also reviewed and rejected the written statement from a doctor "who interviewed [Salas] six years after her separation" from PMMI. The Board noted the doctor "append[ed] a statement from an industrial expert who ha[d] unflattering things to say about the employer's factory which apparently he never visited." The medical expert never examined Salas and did not review her medical records. He also assumed the "environmental conditions at the factory were the cause of the allergic reaction" based on the industrial expert's report and interview with Salas. The doctor's entire report was based on "[a]ssuming [Salas's] view is correct" in her reporting of conditions at PMMI's factory.

According to the report submitted by the industrial expert, he did not speak to anyone at PMMI regarding the company's operations, equipment, ventilation system, or chemicals used. The expert solely relied on information and photographs provided by Salas. He hypothesized that persons in the quality controlled clean room had a "likelihood of exposure" to "fumes, aerosols and dust from the machines." His entire report was rife with speculative and

unsubstantiated conclusions. While the Board considered both expert reports, it gave them "little weight."

The Board also questioned Salas's testimony "that she would have accepted a transfer to the employer's office had it been offered." The Board found the response by PMMI's testifying witness more credible. PMMI's witness testified, "that had they known this they would have accommodated her." Because Salas abruptly resigned after accepting the offered transfer to the quality controlled clean room, the Board concluded "[t]his foreclosed the chance of any further change in her work."

On appeal, Salas alleges the following: (1) PMMI discontinued the interactive process regarding a reasonable accommodation for her disability; (2) she had good cause for refusing the offered alternate position; (3) she resigned prior to an imminent discharge by PMMI; (4) the accommodation in the quality controlled clean room should be considered "new work"; and (5) she should not be compelled to refund unemployment benefits.

The scope of review of an administrative agency's final determination is limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). The agency's decision may not be disturbed unless shown to be arbitrary, capricious, unreasonable, or inconsistent with applicable law. Ibid. "If the Board's factual

findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459 (1982)). "[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. We "must . . . give due regard to the opportunity of the one who heard the witnesses to judge their credibility." Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997).

The Board was instructed to determine whether Salas's separation should be decided under N.J.S.A. 43:21-5(a) as a voluntary leaving of work or under N.J.S.A. 43:21-5(c) as a refusal of suitable work. Salas I, slip op. at 2-3. Salas argues neither occurred because "the employer discontinued the interactive process for a reasonable accommodation for her disability after [she] reasonably rejected the proposed new work."

In alleging failure to accommodate a disability, a plaintiff must establish: (1) a disability; (2) the individual was otherwise qualified to perform the obligations of the job; and (3) the individual suffered an adverse employment action because of the disability. Svarnas v. AT&T Commc'ns, 326 N.J. Super.

7

59, 73 (App. Div. 1999). At no time did Salas claim she was disabled. Nor did Salas contend PMMI discriminated against her because of a disability. Having failed to present a qualifying disability, Salas cannot establish her failure to accommodate claim.

Even assuming Salas was disabled as a result of her pregnancy or skin rash, PMMI did not discontinue the interactive process regarding a reasonable accommodation. The Board found the testimony offered by PMMI credible regarding Salas's abrupt resignation from the company without any further discussion about the temporary job position. It is incumbent upon the employee and employer "to assist in the search for appropriate reasonable accommodation and to act in good faith." Tynan v. Vicinage 13 of the Superior Court of N.J., 351 N.J. Super. 385, 400 (App. Div. 2002) (quoting Taylor v. Phoenixville School District, 184 F.3d 296, 312 (3d Cir. 1999)).

Here, the record does not support Salas's argument because she resigned after initially accepting PMMI's offer of an alternate job as an accommodation during her pregnancy. Salas cannot claim a failure to accommodate when she abruptly quit her job without any further discussion.

We next consider whether Salas had good cause for refusing the alternate position in the quality controlled clean room. An individual will be disqualified

from receipt of unemployment benefits "[f]or the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed . . . . " N.J.S.A. 43:21-5(a). An individual who leaves a job due to a health condition "which does not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause 'attributable to such work,' provided there was no other suitable work available which the individual could have performed." N.J.A.C. 12:17-9.3(b).

Our Supreme Court has held the "good cause" element "denotes 'a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment.'" Ardan v. Bd. of Review, 231 N.J. 589, 602 (2018) (quoting N.J.A.C. 12:17-9.1(b)). "The test of 'ordinary common sense and prudence' must be utilized to determine whether an employee's decision to leave work constitutes good cause." Brady, 152 N.J. at 214 (quoting Zielenski v. Bd. of Review, 85 N.J. Super. 46, 52 (App. Div. 1964)).

"The decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Domenico v. Bd. of Review, 192 N.J. Super. 284, 288 (App. Div. 1983).

Employees must attempt to remain employed rather than seek unemployment benefits. Ibid. (citing Condo v. Bd. of Review, 158 N.J. Super. 172, 175 (App. Div. 1978)).

Salas left her employment because she claimed the alternate assignment in the quality controlled clean room failed to filter the irritating chemical despite the use of a special air-filtration system. Salas failed to proffer any proof that the quality controlled clean room had the same exposure to chemicals as the factory floor. Nor did she provide evidence that she attempted to remain employed at PMMI in some other position rather than seek unemployment benefits. The representative of PMMI told the Board Salas was a valuable employee and it would have found an office position if she had requested such a job instead of resigning.

"When an individual leaves work for health or medical reasons, medical certification shall be required to support a finding of good cause attributable to work." N.J.A.C. 12:17-9.3(d). The claimant bears the burden of proving his or her medical condition was aggravated by his or her employment duties to qualify for the medical good cause exception. Brady, 152 N.J. at 218.

Salas alleged she left the job for medical reasons, which required her to provide a medical certification. During the hearing before the Board, Salas

provided only the July 2012 note from her nurse midwife and two expert reports. The Board considered these documents in rejecting Salas's request for benefits. The Board found the nurse midwife's note merely "encouraged" Salas to "possibly" obtain an alternate assignment on a temporary basis. The Board gave little weight to the industrial expert's report because his opinion was not based on a physical inspection. The Board also concluded the doctor's report was not persuasive because his opinion was based on an interview with Salas six years after she resigned from PMMI. Having reviewed the medical documents provided by Salas, we agree that the nurse midwife's note and expert reports failed to satisfy Salas's burden to prove the work setting aggravated a medical condition.

We next consider the argument that the job offered to Salas in the quality controlled clean room constituted "new work" pursuant to N.J.A.C. 12:17-11.5. Salas argues the offered "new work" was unacceptable because she would have been exposed to the same chemicals in the new work location.

N.J.A.C. 12:17-11.5(a)(3) defines "new work" as "[a]n offer of work made by an individual's present employer of substantially different duties, terms or conditions of employment from those he or she agreed to perform in his or her existing contract of hire." When determining whether an assignment will

11

constitute "new work," the court will consider "the employer's change of hours or shift, job duties, location, salary, benefits, work environment and health and safety conditions." Ibid.

Here, PMMI testified there was no change in pay, hours, benefits, or building location for the position offered to Salas. Based on substantial credible evidence in the record, we are satisfied the Board correctly determined the alternate job did not constitute "new work" and therefore the separation was the result of Salas's voluntary resignation under N.J.S.A. 43:21-5(a) rather than refusal of suitable work under N.J.S.A. 43:21-5(c).

We next address the argument that Salas left work prior to an impending discharge by PMMI. N.J.A.C. 12:17-9.5 provides, "[i]f an individual leaves work after he or she is notified by the employer of an impending layoff or discharge, he or she shall be subject to disqualification for benefits unless the individual will be separated within 60 days." Allowing benefits to an employee under such circumstances requires near certainty the employee would be discharged absent his or her resignation. Cottman v. Bd. of Review, 454 N.J. Super. 166, 170 (App. Div.

2018) (holding "when an employee knows that he or she is about to be fired, the employee may quit without becoming ineligible" for unemployment benefits).

Here, PMMI made no imminent threat to Salas's employment. Salas conceded "the employer did not threaten discharge." She failed to produce evidence she would be laid off or discharged from her employment. To the contrary, PMMI testified Salas was "an excellent employee." Based on the credible evidence, we conclude the Board appropriately found no imminent threat to Salas's job that caused her to resign rather than be discharged or laid off.

Salas also argues she should not be compelled to refund unemployment benefits. We decline to address this argument based on Rule 2:2-3(a)(2), which reserves appeals as of right for review of final decisions or actions of any state administrative agency. Here, there is no final agency decision regarding Salas's obligation to refund the benefits awarded. The Board determined "[w]hether the claimant is liable to refund the benefits she received while disqualified is a matter for the Director to decide . . . . As to whether the claimant qualifies for a refund waiver, the claimant must pursue this matter by petitioning the Director who has original jurisdiction in such matters." Absent a final agency

determination that Salas is liable to refund the benefits, the matter is not ripe for appellate review.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4981-17T3